It is interesting to note that the petitioner achieved its corporate origin on September 16th, 1811, pursuant to the legislative enactment of 1799. Among its faithful and devoted members of more recent years was one William A. Peters, who died testate on June 17th, 1916.
The decedent incorporated in his last will and testament the following articles of present relevancy:
"Fifth: I give, devise and bequeath my real estate and building situate thereon known as the Park Building, Nos. 309, 309 a, 311 and 313 George Street, New Brunswick, N.J. to The First Methodist Episcopal Church of New Brunswick, N.J., In Trust, nevertheless, to and for the following uses, purposes and trusts, to wit: First to pay to my said daughter Mabel L. Doughty, out of the net profits *Page 93 
from the rentals derived therefrom the sum of Fifty ($50.00) Dollars per month during the term of her natural life; Second: Out of the net profits from the rentals derived therefrom to divide annually the sum of One Hundred ($100.00) Dollars in equal shares among such children of my said deceased sister Mary E. Eaves, as may be living at the time of my death, and the survivors or survivor of them during the respective terms of their natural lives; Third: To pay the residue or remainder of the net profits from the rentals derived therefrom to The First Methodist Episcopal Church of New Brunswick, N.J.; said residue or remainder to be divided by the governing body of said Church and paid as follows: the equal one-third part thereof for Home Missions; the equal one-third part thereof for Foreign Missions and the remaining equal one-third part thereof for the needy poor of the City of New Brunswick, N.J., as a charity fund.
"Sixth: Upon the death of my said daughter, Mabel L. Doughty, and upon the death of all of the children of my said deceased sister, Mary E. Eaves, who shall be living at the time of my death, I give, devise and bequeath my said real estate known as the Park Building, as aforesaid, together with all the rest, residue and remainder of my Estate whether real, personal or mixed, and wheresoever situate, of which I may die seized, possessed or entitled, to The First Methodist Episcopal Church of New Brunswick, N.J. absolutely and forever; upon condition, nevertheless, that the Official Board of said Church shall divide and pay the total net receipts from the rentals to be derived from said Park Building in manner following, that is to say; the equal one-fourth part thereof to the current expenses of said Church; the equal one-fourth part thereof to Home Missions; the equal one-fourth part thereof to Foreign Missions and the remainder one-fourth part thereof to the Poor, as a charity fund."
It is at once noticeable that the testator did not confer upon the present petitioner as his trustee any power to sell the real estate which he described as the "Park Building." The subsequent eventualities are that the testator's daughter, Mabel L. Doughty, has died and the only surviving child of the decedent's sister is one Mary Louise Love.
The petitioner has continuously administered the trust, but recently its board of trustees and, indeed, its members have entertained the conviction that a sale of the property and a prudent investment of the proceeds would be more beneficial to the trust and its objects and purposes.
Accordingly, it was made known to as many as nine real estate agencies in the city that the petitioner would welcome proposals for the purchase of the property. Of the offers received, that of one Samuel Fertig was deemed to be the most acceptable and on January 27th, 1947, a provisional agreement *Page 94 
in writing was prepared and executed relative to the conveyance of the premises to Mr. Fertig for the price of $45,000, contingent necessarily upon the approval of the sale by the Chancellor in an appropriate proceeding to be inaugurated under the statutes, R.S. 15:14-7, 9 and 10, N.J.S.A.
Upon the filing of the present petition an order was made instructing a special master to inquire into the merits of the application, upon a prescribed notice to the beneficiary, Mary Louise Love, and to the Attorney-General of New Jersey, neither of whom, I observe, has interjected any objection to an acquiescence in the prayer of the petition.
At the hearing before the special master certain persons other than Mr. Fertig who were evidently interested in acquiring the property, sought to interpose and to assert their willingness to pay a higher price. The special master declined to hear them, and perhaps with justification. See In re St. Michael's Church, c.,76 N.J. Eq. 524; 74 Atl. Rep. 491; In re Board of Education ofCamden, 103 N.J. Eq. 428; 143 Atl. Rep. 620.
The conclusions of the special master, adequately supported by the evidence adduced before him, are expressed in his report as follows: "I further find and report that a sale of said lands and tenements will promote and benefit said trust if the proceeds from said sale are invested and will increase and enhance the interest of such trust and that the whole of said lands and tenements should be sold for the highest and best price that canbe obtained for the same, free from the limitation of said trust." (Emphasis mine.)
In concluding his report, the special master stated: "I therefore find and report that it will be greatly to the advantage of the trust to accept this offer of forty-five thousand ($45,000) dollars cash for the above stated reasons."
Upon the presentation of the master's report to me for confirmation, the solicitors of several individuals, not parties to the proceeding, sought audience to announce that their respective clients were prepared to offer a purchase price for the property in excess of $45,000.
Counsel for the vendee Fertig was thereupon heard to insist that the contract between the petitioner and his client was *Page 95 
negotiated in good faith after the consideration of all the offers then submitted, that the evidence introduced before the master disclosed that the purchase price of $45,000 is fair and reasonable, that the parties to the present proceeding voice no objection to the consummation of the tentative contract, and that the present aspirants have no legitimate and recognizable standing to enable them to intervene.
Those averments are not unimpressive, but they do not necessarily preclude me from ascertaining in some reliable manner the highest price obtainable for the property. The avenue of procedure charted by the legislature is available.
The statutory enactments ordain that a sale, when organized, shall be reported to the Chancellor and confirmed and approved by him before a conveyance is executed. R.S. 15:14-7, N.J.S.A.;R.S. 15:14-10, N.J.S.A. I am not unaware that the Attorney-General is the authorized advocate of the public interest in religious and charitable trusts, yet I cannot ignore the manifest intent of the legislature that the terms of all sales of this nature, including the sufficiency of the purchase price, should undergo the critical scrutiny and supervision of the Chancellor to the end that the trust may be nourished as much as the available opportunities will permit.
I am disposed to confirm the conclusion of the special master that a sale of the property at the best price obtainable will benefit the trust. But in view of the apparent vigilant eagerness of the several individuals to acquire the property and the existing propitious market conditions, I shall, with due regard for the situation of the present vendee, defer confirmation of the proposed sale to him, and advise an order directing that competitive bids be openly submitted for the property at a time and place to be therein designated and upon notice duly published. Counsel for the petitioner may communicate with me concerning the composition of the order. *Page 96