[Civ. No. 13553. First Dist., Div. One. Jan. 22, 1948.]

Estate of SARAH JANE DE LA MONTANYA, Deceased. JACQUES DE LA MONTANYA, Appellant, v. PACIFIC NATIONAL BANK OF SAN FRANCISCO, as Trustee, etc., Respondent.

James E. Colston, Richard O'Connor and A. C. Wollenberg for Appellant.

Schofield & Hanson, Allison E. Schofield and Raymond L. Hanson for Respondent.

WARD, J.—Jacques de la Montanya, one of the beneficiaries under a testamentary trust provided for in the will of Sarah de la Montanya and made a part of the decree of distribution in that estate, appeals from an order made on April 7, 1947 which plaintiff designates as an order "confirming sale of certain real property therein described belonging to the trust estate, to A. Hirschberg."

Sarah de la Montanya was a widow and all the property of her estate was her separate property. Among her survivors appear Sarah J. Dorn, Jacques de la Montanya and Lorraine S. Crittenden. In 1919, the decree of settlement of account and final distribution in the estate of Sarah Jane de la Montanya was ordered closed and Sarah Dorn, the executrix of the estate, discharged upon the payment of certain legacies. Certain parcels of land, under the terms of the will were distributed to Frank R. Wehe "as trustee, and his successors, in trust . . ." The trustee was given unlimited power to manage the property, to invest any sums received and "The trustee herein named, shall have power to sell the whole or any part of the property hereinbefore described, or

hereafter acquired under the terms of this instrument, at public or private sale or with or without notice, as the said trustee may determine, and the said trustee, in the execution of the trusts herein created, shall have full power and authority to grant, bargain, sell and dispose of any and all of the property held by him in trust and to hold and manage all of the said property and to control all of the income arising therefrom, and to collect all insurance in case of loss and invest and reinvest the same in the same manner that he is hereby empowered to invest other funds of said trust and to pay all of the expenses advisable in and about the management thereof or its maintenance and improvements, and he is hereby further empowered from time to time in his discretion to sell, mortgage, hypothecate, dispose of, license any act in relation to and convey any or all of the trust property or any interest therein received or held by him without the order, aid, intervention, approval, or confirmation, of any court or any judge of any court . . .'' The Probate Court in 1919, in the decree of settlement of account and final distribution provided: ''The said trustee shall after paying all of the expenses and other charges or sums in this instrument provided for and after setting aside and accumulating as much as he may deem necessary at any time for the purpose of paying for repairs and making improvements, or for any other purpose contemplated hereby, pay the net income of said trust property to Lorraine S. Crittenden and to Jacques de la Montanya, Jr. or such part thereof as they may require and apply for; one-half to each of the said parties, for the support of the said Lorraine S. Crittenden, and for the support and education of Jacques de la Montanya, Jr., who is now a minor. . . .

''That the said trust is upon the conditions that if the said Lorraine S. Crittenden should die without heirs of her body before the said Jacques de la Montanya, Jr., that this trust should cease without any act on the part of the trustee or any other person, and that all of the said property shall immediately vest in fee simple in the said Jacques de la Montanya, Jr.'' When read in conjunction with other provisions the trust appears to be a spendthrift trust. (Restatement of the Law, Trusts, § 152.) This is a possible explanation of the general and extensive power conferred on the ''trustee and his successors.''

Trustee Wehe resigned in 1925. His accounts were ap-

proved, his resignation accepted, and Sarah Jane Dorn, the aunt of Lorraine Crittenden and grand-aunt of Jacques de la Montanya, was appointed trustee. In 1929, Sarah J. Dorn rendered a report which was approved. At the same time she resigned as trustee and was succeeded by the Pacific National Bank of San Francisco.

The Pacific National Bank of San Francisco, as trustee, filed interval reports which were approved by the court. On July 16, 1946, the bank as trustee filed its 17th annual report and account. On February 14, 1947, the bank filed a document entitled Return of Sale and Petition for Order Confirming Sale of Real Estate, which contained the following: "That by the terms of the order of final distribution in said estate which includes the trust provisions under which the said trustee is now managing said trust estate, said trustee is given full authority to sell any or all property of said estate without notice, and at private sale. That pursuant to said authority, petitioner on the 7th day of February, 1947, sold certain real estate, which will be more fully hereafter described, at private sale, without notice, to one Joseph W. Harris for the sum of One Hundred Thirty Thousand Dollars ($130,000.00) on the following terms:—Five Thousand Dollars ($5,000.00) paid as a deposit upon the signing of said agreement, Twenty Thousand Dollars ($20,000.00) cash *on confirmation of sale by the above entitled court,* and the remaining One Hundred Five Thousand Dollars ($105,000.00), to be evidenced by a promissory note bearing interest at six and one-half (6½) per cent per annum, and to be payable twenty-five (25) years from the date of sale. Said note is to be secured by a first deed of trust, and to provide that no payment of principal can be paid for a period of ten (10) years from the date of said note, and that thereafter the purchaser shall have the option of paying monthly principal payments not to exceed Three Hundred Fifty Dollars ($350.00) per month. The purchaser is to deposit as security for his payments as aforesaid, the sum of Twenty-five Thousand Dollars ($25,000.00), in United States Government Bonds, which said Bonds shall remain in the possession of the trustee until such time as the purchaser shall have spent the sum of Twenty-five Thousand Dollars ($25,000.00) or more on improvements to said property, or paid the promissory note in full." (Emphasis added.) Jacques de la Montanya filed objections upon the following

grounds: "That said sale is not for the best interest of the estate, or for the beneficiaries under said trust, neither is said sale to the advantage of the estate, nor for the benefit of the beneficiaries therein named.

"That said sale was not legally made or fairly conducted.

"That the funds to be received by the estate for the sale of said property cannot be invested in either property or securities of equal safety that will bring returns equal to the present or future earnings of said real property."

The trustee bank, through its legal representatives at the opening of the court proceedings stated its position as follows: "This is an application for an order confirming a sale of real property in a testamentary trust. This is not a probate sale. The trust provides that the trustee—and the Pacific National Bank is the successor trustee—has full power to sell any and all of the assets of the estate, so that we didn't have to come here at all. But it has been the custom of the Pacific National Bank to come to court—ever since they undertook the administration of the trust—and seek the Court's approval of all their acts, without waiting for the annual accounting." The trust officer of the bank testified: "Primarily, it is a question of income, and of the condition of the property. It is a very old building, constructed, as we understand it, sometime between 1860 and 1870, and not in good condition. It is under lease to some very good tenants at the present time, but one lease expires in 1951 and the other in 1953, and we are led to believe that at the expiration of those leases, in order to renew the main lease, or get the same class of tenant who are now in the building, a large expenditure will be required at that time to renovate the building. The trust has no funds except cash in the sum of $1,200 or $1,500, and we would be in no position to renovate the building, if that occurred, without borrowing. . . .

"The terms of the offer are $130,000, of which $25,000 is to be paid in cash, and the balance over a 25-year period, no principal payments over the first ten years, and then payments in a small amount by the purchaser—not compulsory —all deferred payments to bear interest at 6½ per cent. The purchaser has also agreed to put up $25,000 in Government bonds to insure his carrying out the terms of the trust, which deposit is to be released when he makes improvements to the property, subject to our approval, of a like amount."

The record shows that the property had been appraised

at $130,000 and that the income in the previous year amounted to $6,999.97. There were many circumstances to consider. There was some evidence to the effect that it would cost at least $100,000 to make all the improvements necessary to release the property. Smaller amounts appear as sufficient for less improvement. Jacques' interest should be considered, but likewise Lorraine Crittenden's. In the proposed sale $5,000 was to be paid upon the signing of the agreement; $20,000 upon confirmation of the sale, and the remaining $105,000 to be evidenced by a promissory note bearing interest at $6\frac{1}{2}$ per cent per annum, to be payable 25 years from the date of the sale. The note was to be secured by a first deed of trust, and no payment of principal was to be made for a period of 10 years from the date of the note. It was agreed that $25,000 in United States government bonds should remain in the possession of the trustee until the purchaser spent $25,000 in improvements to the property or until payment of the note in full. By agreement the proposed sale was subject to confirmation by the court. In addition, the court could have considered the following facts: That interest at $6\frac{1}{2}$ per cent on $105,000 would amount to a fair sum when divided between the beneficiaries; that the delay in the payment of any part of the principal for 10 years, would, in the natural course of events, favor Jacques de la Montanya. He stands in the position of a prospective remainderman but without guarantee that he will so continue. According to statements made by his counsel during the court proceedings: "When his aunt and grand-aunt go he will own the property." The disposition of the property under the terms mentioned seems to accord with the evident purpose of the trust. The price and details in connection with the contract entered into between the trustee and the prospective purchaser Harris were matters to be determined by the trial court. ■ The offer of Harris to buy, and the tentative acquiescence of the trustee bank to sell was *"on confirmation of sale by the above entitled court."* (Emphasis added.) Irrespective of powers granted to the trustee by the decree and final distribution in the original order of appointment of a trustee, or in the subsequent specific order appointing this bank as trustee, this particular transaction as agreed upon between the parties was subject to confirmation by the court.

One difficulty in considering the merits of this appeal is

the assumption of plaintiff that there is a lack of jurisdiction, and the statement that at the last session of the Legislature a bill was introduced which would have "given successor trustees just the powers that the trustee here is trying to usurp." The Senate bill need be given no further consideration by this court as it did not pass. ▮ The general rule is that lack of jurisdiction is not waived by failure to plead it or to raise objection until the case reaches a court of review. ▮ Jurisdiction is given under Probate Code, section 1120 which provides in part: "When a trust created by will continues after distribution, the superior court shall not lose jurisdiction of the estate by final distribution, but shall retain jurisdiction for the purpose of . . . passing upon the acts of the trustee. . . . The trustee may also petition such court, from time to time, for instructions. . ." (See, *Estate of White*, 69 Cal. App.2d 749 [160 P.2d 204] ; *Estate of Marre*, 18 Cal.2d 184 [114 P.2d 586] ; *Willson* v. *Security-First Nat. Bk.*, 21 Cal.2d 705 [134 P.2d 800].) The language is broad enough to give jurisdiction over all controversies arising between a trustee and a beneficiary where the method of operation or the good and sound judgment of the trustee is involved. (*Estate of Smith*, 4 Cal.App.2d 548 [41 P.2d 565] ; *Estate of Smead*, 12 Cal.2d 20 [82 P.2d 182].) In the present case the trustee decided to sell the property ; one of the beneficiaries objected. It made little difference whether the petition was a petition to "confirm" or one for "instructions."

▮ The powers of a trustee attach to the office unless the terms of the trust provide otherwise. (Restatement of the Law, Trusts, § 196 ; see, also, *Fatjo* v. *Swasey*, 111 Cal. 628 [44 P. 225] ; *Estate of Canfield*, 80 Cal.App.2d 443 [181 P.2d 732].)

▮ Plaintiff argues that as a matter of practice the court erred in proceeding under Probate Code, section 785, to accept a higher bid in open court. It has not been made clear to this court that the lower court proceeded under section 785. The method used was a practical one under section 1120 to determine whether the bid of $130,000 should be affirmed. During the taking of such evidence a Mr. Hirschberg arose in open court and bid $150,000 under an agreement similar to the Harris contract, with acceptance of specified conditions and waiver of certain technical objections to title made in open court. It was then that the court, exercising jurisdiction under Probate Code, section 1120, asked if there were any

higher bids. This procedure may have reminded counsel of the method used under section 785, but the trustee and the subject matter, no matter what method was used or in what form the petition appeared, remained within the realm of the jurisdiction conferred by section 1120. It must be remembered that in the present case title did not pass to the man who made the original offer. The prospective sale to Harris was on condition that the sale should be confirmed by the court. The sale was not confirmed and title therefore remained in the estate.

In the order of instruction the court said: "That the said trustee is given full authority under the trust provisions of said trust to sell any or all property of said estate without notice and at private sale." The order also relates the Harris transaction and recited: "That by reason of the premises the original sale is not for the best interests of the trust nor for its advantage and benefit." The hearing is set forth including the Hirschberg offer. Thereupon the court instructed the trustee to accept the $150,000 offer.

It does not appear that there was any sound legal objection interposed. The trustee could have made the sale for $130,000 independently of the beneficiaries. It is hard to understand how a sound factual objection could be based upon the action of the court in obtaining $20,000 more than the original bid.

It appears that the determinative question on this appeal is whether the evidence supports the findings in the order heretofore mentioned. As a matter of law we are not in a position to say that the trial court erred in determining that the sale was in the best interests of the trust.

The order appealed from, namely, the order of April 7, 1947, instructing acceptance of the offer to purchase the real estate, is affirmed.

Peters, P. J., and Bray, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 18, 1948.