PIETRO DIOTALLEVI, Appellant, *v.* SIERRA DEVELOPMENT COMPANY, a Nevada Corporation, dba CLUB CAL NEVA; FIRST NATIONAL BANK OF NEVADA, a National Banking Association; and RAE ZETOONY KAHAN, Respondents.

No. 10463

February 28, 1979                                       591 P.2d 270

*Swanson, Swanson & Capurro,* Reno, for Appellant.

*Phyllis Halsey Atkins* and *William Thornton,* Reno; and *Sinai, Ohlson & Schroeder,* Reno, for Respondents.

## OPINION

By the Court, MOWBRAY, C. J.:

This is an appeal from an order confirming sale of trust property. We affirm.

This is the second time the case has been before us. In Diotallevi v. District Court, 93 Nev. 633, 572 P.2d 214 (1977), appellant Diotallevi's petition for a writ of prohibition was denied on the ground that he had an adequate remedy by appeal. This appeal is brought as a result of that ruling.

The underlying facts are set forth in our previous opinion. In brief, appellant challenges an order entered by the court below on April 15, 1977, which confirmed a lease-sale of property held in trust by respondent First National Bank of Nevada (Bank) to respondent Sierra Development Corporation (Cal Neva), subject to receipt of higher bids at an oral bidding conducted in open court. Appellant suggests that the court was

bound to confirm his prior bid of $51,000 annual rent, submitted pursuant to a court-authorized sale. The authorization, and subsequent proposed contract, however, were expressly made subject to confirmation by the lower court.

In-court bidding was later conducted, pursuant to notice, by the court on February 23, 1978, following our denial of appellant's petition for a writ of prohibition. Cal Neva submitted the high bid of $150,000 annual rent. The court ordered the lease-purchase agreement confirmed with Cal Neva, at that rate. This appeal resulted.

## THE COURT'S JURISDICTION

As a threshold issue, respondent Cal Neva urges that since appellant argued the issue of the court's jurisdiction in the petition for a writ of prohibition, which this court denied in Diotallevi v. District Court, *supra,* appellant is now precluded from raising that issue again on this appeal. This contention is meritless. Appellant's petition was denied on the ground that he had an adequate remedy at law under NRS 155.190. The issue of the jurisdiction of the lower court to refuse to confirm appellant's bid was not ruled upon in Diotallevi v. District Court, *supra.* Appellant may therefore raise the issue on this appeal.

Appellant suggests that the order conditionally confirming the bid of Cal Neva, and refusing to confirm his bid, was beyond the subject matter jurisdiction of the lower court, sitting as a probate court, under NRS Ch. 153. We believe, however, that the probate court had jurisdiction under NRS Ch. 153 to issue the order in question.[1]

Since its adoption in 1941, NRS Ch. 153 has permitted probate courts to retain jurisdiction over testamentary trusts "for the purpose of the settlement of accounts . . . and for the distribution of·the residue to those entitled to it." NRS 153.020(1); 1941 Nev. Stats. ch. 107, § 244, p. 217. By amendment in 1947, the statute also permits a trustee to "petition the court from time to time, for instructions as to the administration of the trust." NRS 153.040(1); 1947 Nev. Stats. ch. 22, § 1, p. 39.

Appellant relies heavily on In Re Devincenzi's Estate, 65 Nev. 158, 190 P.2d 842 (1948), for the proposition that Chapter 153 does not confer upon the probate court jurisdiction to

---

[1]Much attention has been given in the briefs to the question of whether Chapter 153, dealing with probate matters, or Chapter 164, dealing with trusts, applies to the present administration of this testamentary trust, established in 1951. In view of our resolution of the matter, it is unnecessary to discuss this issue.

refuse to confirm the lease-sale to him. The *Devincenzi* case dealt with the predecessor of NRS 153.020, regarding settlement of accounts. In that case, the beneficiaries objected to an already completed sale, which the trustees had *not* brought to court for prior approval. California cases, as noted in *Devincenzi,* had interpreted the comparable provision of their probate code quite narrowly, so as to limit the ability of beneficiaries to challenge, in probate court, the administration of a testamentary trust. *E.g.,* In Re Hubbell's Estate, 8 P.2d 530 (Cal.App. 1932); Johnson v. Superior Court, 247 P. 249 (Cal.App. 1926); Parkman v. Superior Court, 246 P. 334 (Cal.App. 1926).

Since those California cases were decided, two changes have been made in the comparable section of the California Probate Code, now § 1120. *See* 1931 Cal. Stats. ch. 281, § 1120, at 659. The first, for which there has been no comparable change in NRS Ch. 153, provides that the probate court retains jurisdiction for the purpose not only of settling accounts and distribution but also of "passing upon the acts of the trustees." The second addition to the California section provides that "The trustee may also petition such court, from time to time, for instructions as to the administration of the trust." For this addition, Nevada *does* have a comparable provision, NRS 153.040(1), providing that trustees may "petition the court, from time to time, for instructions at to the administration of the trust." (added 1947 Nev. Stats. ch. 33, § 1, at 39). This provision of the California statute has been interpreted by the California courts as conferring upon probate courts jurisdiction over administration of trust matters—when such matters are brought to the court by the trustees themselves. *See* In Re Keet's Estate, 100 P.2d 1045 (Cal. 1940); In Re Smith's Estate, 41 P.2d 565 (Cal.App. 1935).

In this case, the matter was before the court as a result of a trustee's petition. Therefore, NRS 153.040 provided the predicate for the court's jurisdiction.

Since the lower court had jurisdiction to authorize the lease-sale under NRS 153.040, it also had jurisdiction to require the trustees to return to it for confirmation. Having subject matter jurisdiction, the court could bring to bear its full equitable powers. *See* In Re Charters' Estate, 293 P.2d 778, 784 (Cal. 1956); In Re Evans' Estate, 144 P.2d 625, 629–30 (Cal.App. 1944). Courts of equity have traditionally had the power to authorize a trustee's sale subject to a requirement that the proposed sale be submitted to the court for approval. 7 Bogert, Trusts § 742, pp. 587–88 (2d ed. 1960). In confirming the sale, the court simply borrowed a procedure from statutes governing

estate sales for receipt of higher bids in open court, a practical and fair method for determining the best price available. *See* In Re De La Montanya's Estate, 188 P.2d 494 (Cal.App. 1948). Therefore, the order entered April 15, 1977, was within the jurisdiction of the probate court under the provisions of NRS 153.040.

## THE COURT'S DISCRETION

We turn to consider whether the court abused its discretion in refusing to confirm appellant's bid. In claiming that the court did so, appellant urges this court to follow In Re Strass' Trust Estate, 105 N.W.2d 553 (Wis. 1960), where the court reversed a lower court confirmation of a subsequent higher bid following a trustee sale.

In *Strass,* the testamentary trustee petitioned the court for permission to vacate an agreement for sale of trust property made pursuant to court authorization. The agreement provided that it was subject to court confirmation. The trustee alleged that he had received and accepted an offer of $16,000 for the property, only to receive an offer of $17,000 a few days later. The property had been appraised at $15,000, and the beneficiaries had consented to a sale at $16,000 or more. The lower court refused to confirm the original agreement, and conducted an auction in open court that produced a high bid of $18,300, which the court confirmed.

The Supreme Court of Wisconsin reversed, holding that the facts were insufficient to sustain an order setting aside the original sale or refusing to confirm it. The court noted that "there is no claim that there was any mistake, misapprehension, or inadvertence, no suspicion of fraud, and the trustee acknowledged that $16,000 was not disproportionate to the value of the property. The trial court did not find otherwise." 105 N.W.2d at 555.

Respondents, on the other hand, urge this court to follow In Re De La Montanya's Estate, *supra,* in which the California appellate court sustained a similar lower court order. In *Montanya,* the testamentary trustee applied to the court for an order confirming its sale of trust property under a trust instrument which granted it full discretionary power to do so. The contract for purchase provided for a full price of $130,000, of which a portion of the payment was to be made on court confirmation. During the confirmation hearing, a bidder offered $150,000. The court, after inquiring whether there were any further bids, ordered the sale to the second bidder confirmed.

The appellate court upheld the trial court's determination

that "the original sale [was] not for the best interests of the trust nor for its advantage and benefit." 188 P.2d at 498. It emphasized that "in the present case title did not pass to the man who made the original offer. The prospective sale . . . was on condition that the sale should be confirmed by the court." In the court's view, "the determinative question on this appeal is whether the evidence supports the findings in the order." It concluded that "As a matter of law we are not in a position to say that the trial court erred in determining that the sale [to the highest bidder] was in the best interests of the trust." *Id.*

The most clear-cut distinguishing feature between the authority cited by appellant and that cited by respondents is the courts' respective policy concerns. Those jurisdictions which stress the importance of upholding trustee's contracts and the finality of trustee sales tend to uphold the original agreement. *See* Evans v. Hunold, 65 N.E.2d 373 (Ill. 1946); Gilden v. Harris, 78 A.2d 167 (Md.App. 1951); In Re Strass' Trust Estate, *supra*. Those jurisdictions which stress the duty of trustees, and the courts, to protect the interests of beneficiaries in obtaining the best possible price tend to allow acceptance of later bids. *See* In Re De La Montanya's Estate, *supra;* Buttle v. Saunders, 2 All E.R. 193 (1950); Forester v. O'Connell & Lee Mfg. Co., 103 N.E.2d 705 (Mass. 1952); Application of First Methodist Church, 56 A.2d 120 (N.J.Ch. 1947); In Re Stone's Estate, 56 A.2d 664 (Pa. 1948). *Cf.* A-Mark Coin Co. v. Estate of Redfield, 94 Nev. 495, 582 P.2d 359 (1978). We prefer the latter policy as more equitable, and for the reasons expressed below hold that it should govern in the instant case.

In the instant case, the trustees and the court had a particular responsibility for considering the interests of the beneficiaries, the great majority of whom resided in various foreign countries and, therefore, could not have been expected to appear before the court. Unlike the situation in *Strass,* where the trustees had specifically obtained the consent of the beneficiaries, the only beneficiary who resides in Nevada appeared at the hearing to object to the confirmation of the original agreement. On the other hand, appellant was fully aware that he was dealing with trustees authorized only to negotiate a sale or lease, and that the proposed contract was subject to court approval.

The court had before it an agreement providing for $51,000 annual rent, and a subsequent offer of $72,000 annual rent. Although it had no way of knowing that the eventual bid would be almost triple the amount bid by appellant, it could well have considered that it was worth even more than the subsequent bid before it. In Gumz v. Chickering, 121 N.W.2d 279 (Wis. 1963), the Supreme Court of Wisconsin upheld a lower court's refusal

to confirm a foreclosure sale purchase, holding that the general rule prohibiting such refusal solely on grounds of inadequate price was subject to an exception when the price was "so grossly inadequate as to shock the conscience" of the court. 121 N.W.2d at 284.

Finally, there was evidence before the court below which suggested that the original bidding may have been intentionally low, due to a misunderstanding on the part of Cal Neva officers, namely, that bidding would be entertained at the confirmation hearing. The Supreme Court of Utah refused to compel the lower court to confirm the initially accepted bid in a court-ordered sale of a company in receivership. The court held that "[w]hile the mere inadequacy of the amount bid, standing alone, may not be an adequate cause for setting aside a sale, yet, where, as in this case, there is a misunderstanding among the creditors who desire to bid, it was the duty of the court to protect the best interests of all concerned." Joseph Nelson Plumbing & Heating Supply Corp. v. McCrea, 231 P. 823, 825 (Utah 1924). The court concluded that, under the circumstances, the owners and creditors had greater equitable interests than did the purchaser.

In light of all these circumstances, the beneficiaries are particularly entitled to the "critical scrutiny and supervision of the [court] to the end that the trust may be nourished as much as the available opportunities will permit." Application of First Methodist Church, *supra,* 56 A.2d at 122. In the terms suggested by the court in *Montanya's Estate,* the court's determination in the case at hand that the interests of the trust, and the beneficiaries, required acceptance of subsequent bids was supported by the evidence before it.

We conclude, therefore, that the court below did not exceed its statutory jurisdiction in ruling on the sale, nor did it abuse its discretion in confirming the higher bid of Cal Neva.

Consequently, we affirm.

THOMPSON, GUNDERSON, MANOUKIAN, and BATJER, JJ., concur.