GARRETT, J.
*179 These two appeals, which we have consolidated for purposes of this opinion, arise from a dispute over the administration of a testamentary trust (the DFK trust) created under the will of David F. King. In the first appeal, we conclude that the trial court did not err in determining that Nevada law applied and that, under that law, the trustee breached the trust. Accordingly, we affirm the limited judgment. In the second appeal, we conclude that the trial court erred in construing Nevada law to prohibit a successor trustee from applying a trustee-beneficiary's interest in a trust to compensate the trust for losses caused by that trustee-beneficiary's own breaches of trust. Accordingly, we reverse the order on the petition for instructions and remand for further proceedings.
We begin with factual background and history of the proceedings; the relevant facts are undisputed. In 1995, David F. King executed a will providing for a trust to be established after his death. After he died in 2004, the DFK trust was created by operation of that will. The original trustees were David F. King's brother, E. L. King III; David F. King's sister-in-law, Sarah King; and David F. King's wife, Sandra King. By 2011, Sandra King was acting as the sole trustee; E. L. King III had resigned and Sarah King was no longer involved in the administration of the trust.
In 2011, David F. King's three adult children, David King, Jr., Kristin King-Fournier, and Kathryn King (the children), who are the remainder beneficiaries of the trust, petitioned the court for relief against Sandra, their stepmother, who, in addition to acting as the sole trustee, is the income beneficiary of the trust for her lifetime. The children alleged that under Nevada trust law, Sandra breached the trust by making loans to her son James Cameron and to another entity in which Sandra had an interest. The children alleged that those breaches had caused and would cause substantial losses to the trust. They also alleged that Sandra had improperly treated as income certain distributions to the DFK trust from a limited liability corporation that held mineral interests and certain undistributed earnings of a Subchapter S corporation owned in part by the trust, and that Sandra had failed to account for approximately *180 $900,000 of trust assets. The petition sought relief including removal of Sandra as trustee, an accounting, a surcharge of approximately $2.8 million on Sandra's interest *505 to compensate for the damages caused by her breaches, a withholding of Sandra's trust income until that liability was satisfied, the imposition of constructive trusts on two properties owned by other trusts of which Cameron was the trustee, injunctive and declaratory relief, and attorney fees.
After a four-day trial, the trial court issued a detailed letter opinion. The court held that Nevada law governed the administration of the trust and that, under Nevada law, Sandra had committed breaches of trust and had improperly treated most of the disputed distributions and undistributed earnings as income. In addition to its issue-by-issue analysis, the court provided a general summary of its findings, explaining that Sandra
"by and large treated the assets of the trust as her own without regard to whether those assets were to be treated as income or principal, she entered into a number of poorly secured or totally unsecured large insider transactions that constituted per se breaches of trust under Nevada law, she failed to properly and timely account and she generally ignored or was completely oblivious to the rights of petitioners and the fiduciary duties she owed them as contingent remainder beneficiaries of the DFK trust."
In a limited judgment, the court removed Sandra as trustee and appointed Winona National Bank (WNB) as trustee, surcharged Sandra $913,247, imposed constructive trusts on the two properties, and awarded the children their attorney fees, the amount of which remained to be determined.[1]
*181 Sandra appealed the limited judgment, and that is the first appeal before us.[2]
While the first appeal was pending, the parties' dispute continued. After accepting the appointment as trustee, WNB petitioned for instructions on how to distribute funds in light of the court's previous money awards: one against Sandra and in favor of the trust for $913,247 to compensate the trust for losses caused by Sandra's breaches of trust, and one against Sandra and the trust in favor of the children for the children's attorney fees. As to the first item, WNB sought "direction regarding whether to apply income generated by the trust and owing to Sandra King [ (as the income beneficiary) ] to the judgment against Sandra King and how much she should be given for support." As to the second item, the children's attorney fees, WNB noted that Sandra and the trust were jointly and severally liable for the fees and suggested methods for distributing the income to pay the fee award.
In response to WNB's petition, the children requested that the court order WNB to pay the fee award and the money judgment in full from trust income before distributing further income to Sandra. For her part, Sandra asserted that a Nevada statute protecting interests in spendthrift trusts, Nevada Revised Statute (NRS) 166.120, prohibited the trustee from applying any part of the trust income to satisfy the judgment.
The trial court agreed with Sandra and entered an order instructing the trustee that " NRS 166.120 restrains and prohibits the Trustee * * * from applying income of the [DFK trust] toward the Money Judgment entered against Sandra King herein." The children appeal that order, and that is the second appeal before us.
We consider the two appeals in turn. As noted above, in the first appeal, Sandra appeals *506 the limited judgment, raising eight assignments of error that challenge the trial court's reasoning in numerous respects. In her first *182 assignment of error, she argues that the trial court erred in holding that she breached her fiduciary duty by making the disputed loans, given that the terms of the trust allowed the trustee to make loans to anyone, including "any beneficiary" of the trust. We conclude, as the trial court did, that the will's choice-of-law provision selects Nevada law to govern all questions regarding the administration of the DFK trust, and that, under Nevada law, the disputed loans were breaches of trust. Because Nevada law absolutely prohibits a settlor from allowing insider loans, it is immaterial whether other terms of the trust purport to allow the disputed loans. We reject Sandra's other assignments of error without discussion and thus affirm the limited judgment.[3]
We take the relevant facts, which, again, are undisputed, from the trial court's order and the text of the trust.
"Sandra L. King * * * and the decedent, David F. King, were married in 1976. At the time of the decedent's death in September, 2004, they had been married for nearly 29 years. [Sandra] is currently 74 years old. The trust in question * * * is contained in David King's will which he executed in 1995 when he and [Sandra] were residents of Nevada. In that will, the decedent exercised a general power of appointment over certain property contained in a trust created by his father in 1986. The trust the decedent created by his exercise of this power of appointment allowed for all income from the assets of the trust to go to [Sandra] while alive, with the principal to pass to his children * * * following [Sandra's] death. Decedent designated Sandra, his brother and his brother's wife to act as trustees of the DFK trust. Decedent's brother immediately resigned and [his] brother's wife resigned in 2011; however, prior to her resignation, her involvement was minimal. * * *
"The will was drafted by a prominent estate planning lawyer, Clinton Schroeder, in Minneapolis, Minnesota in 1994."
(Citations omitted; capitalization modified.)
*183 Article Six of the will provides the terms of the DFK trust. As the trial court noted, those terms "confer[ ] upon the Trustee almost unfettered discretion in terms of managing the assets of the Trust." Section 6.2 provides that the trustee "shall have all of the powers enumerated in section 501B.81, Minnesota Statutes," a copy of which is attached to the will and incorporated by reference. Those powers are broad. Section 6.2 also enumerates other broad powers of a trustee:
"To invest and reinvest in, or exchange assets for, any securities and properties [the trustee or trustees] deem advisable including without limiting the generality of the foregoing, common and preferred stocks and shares in mutual funds or other securities of so-called registered investment companies, without being limited in the selection or diversification of investments by any statutes, rules of law, custom or usage whatsoever * * *; and to lend funds of the trust estate to any person, including any beneficiary hereunder, upon such terms, at such rate of interest, if any, and upon such security, if any, as the Trustee may determine;
"* * * * *
"To do all necessary and convenient acts or things which the Trustee deems for the best interest of the beneficiaries of a trust, including making loans to such beneficiaries on such terms and conditions as the Trustee deems appropriate[.]"
Furthermore, and finally, for present purposes, subsection 6.10 of the trust provides as follows:
"6.10 Nevada law to govern:
"The laws of the State of Nevada shall govern all questions which may arise with respect to the interpretation of this Will or *507 the administration of any trust established hereunder."
(Underscoring in original.)
As noted above, the children challenged several loans that Sandra made from trust principal: A loan of $1 million to herself to buy and remodel a house in the Applegate Valley; a loan of "either $900,000 or $950,000" to Cameron for the completion of construction of a house in *184 a suburb of Minneapolis, and two loans totaling $180,000 to a limited liability company winery in which she had an interest.
At the relevant times, Nevada's trust law prohibited loans by a noncorporate trustee like Sandra to herself, family members, and business associates:
"Except as provided in NRS 163.040 [ (relating to corporate trustees) ], no corporate trustee shall lend funds to itself or an affiliate, or to any director, officer, or employee of itself or of an affiliate; nor shall any noncorporate trustee lend funds to himself or to his relative, employer, employee, partner or other business associate ."
NRS 163.030 (2009), amended by 2009 Nev. Laws, ch. 215, § 39 (emphasis added).[4] Critically for this appeal, that provision cannot be overridden by any act of the settlor: "[N]o act of the settlor relieves a trustee from the duties, restrictions and liabilities imposed upon the trustee by NRS * * * 163.030 [.]" NRS 163.160.
The parties dispute, however, whether those provisions of Nevada law are applicable. At trial, Sandra contended that, because she resides in Oregon and many of the trust assets were located in Oregon, the court should apply Oregon law to evaluate the loans that she made to herself, Cameron, and the winery, while the children contended that the court should apply Nevada law.[5] Two attorneys, including Schroeder, the attorney who drafted the will, testified about the effect of section 6.10. As relevant here, Schroeder *185 testified that section "6.10 was inserted in the Will because the decedent was a resident of Nevada." Schroeder testified that he and his co-drafter had intended that Minnesota law-in the form of the list of powers of the trustee that was incorporated into the will-would apply to the powers granted to the trustee, but otherwise Nevada law was to apply. As the trial court summarized, "[u]ltimately, [Schroeder] conceded that not much thought had been given to the interplay between [sections] 6.2 and 6.10, but he didn't think it really mattered because the same fiduciary standards applied."
The trial court concluded that "it is inescapable that, by the title and content of [section] 6.10, Nevada law was intended to apply to matters (i.e. questions) involving the administration of the trust." Because NRS 163.030 prohibits insider loans by the trustee, the court concluded that all of the loans at issue were statutory breaches of trust despite the broad powers that section 6.2 purported to grant to the trustee.
In her first assignment of error, Sandra contends that the court erred in concluding that Nevada law applies to the determination whether the disputed loans were breaches of trust. To evaluate that argument, we consider the text of Article Six of the will, beginning with whether it is ambiguous. "When a trust instrument is fully integrated and is not ambiguous on its face, extrinsic evidence is not admissible to establish the *508 grantor's intent." Samuel v. King , 186 Or.App. 684, 692, 64 P.3d 1206, rev. den. , 335 Or. 443, 70 P.3d 893 (2003). Whether a term in an agreement is ambiguous is a question of law. Yogman v. Parrott , 325 Or. 358, 361, 937 P.2d 1019 (1997). "An ambiguity is presented only when the language of the agreement is reasonably capable of more than one plausible interpretation." Samuel , 186 Or.App. at 692, 64 P.3d 1206.
Section 6.10 of the will provides: "Nevada law to govern: The laws of the State of Nevada shall govern all questions which may arise with respect to the interpretation of this Will or the administration of any trust established hereunder." (Underscoring in original.) In Sandra's view, that text invokes Nevada law only as "a 'gap filler,' that is, to answer questions which the will does not." She further contends that the loans do not raise any question "with *186 respect to * * * the administration" of the DFK trust because the terms of the trust "specifically authorized her to loan money to whomsoever she chose, including herself, family members or companies with which she had a relationship." Sandra cites the powers listed in the incorporated section of Minnesota law as further support for her position that the trust authorized the loans, but she does not advance any developed argument that Oregon or Minnesota law governs the operation of the trust.
Sandra's argument that the choice-of-law provision operates only as a "gap filler" is untenable. It overlooks the fact that, although a settlor has considerable latitude to dictate how a trust will operate, the trust nevertheless operates within and has effect only to the extent that it complies with the trust law of some jurisdiction. See, e.g. , ORS 130.030 ("The meaning and effect of the terms of a trust are determined by: (1) The law of the state, country or other jurisdiction designated in the terms of the trust * * *; or (2) In the absence of a controlling designation in the terms of the trust, the law of the state, country or other jurisdiction having the most significant relationship to the matter at issue."). Each jurisdiction has default rules of construction and validity of trusts, and each has some limitations on the settlor's ability to dictate the terms of the trust. See, e.g. , ORS 130.020 (listing exceptions to general principle that the terms of the trust prevail); NRS 163.160 (similar). The terms of the trust have legal effect only to the extent that they comply with the rules of the chosen jurisdiction. See generally ORS 130.030 (providing rules to determine which jurisdiction's law controls "[t]he meaning and effect of the terms of a trust").
In short, Sandra's argument that the trust has independent legal meaning separate and apart from the law of any jurisdiction, and that Nevada law operates only interstitially, misconceives the law. The trust's text, alone, cannot answer any questions except against the backdrop of the law of some jurisdiction. The trust must be governed by the law of a jurisdiction, and the DFK trust chooses Nevada. Thus, absent any further argument by Sandra, we conclude that, when section 6.10 says that Nevada law applies to "all questions which may arise with respect to * * * the *187 administration of" the DFK trust, it means, unambiguously, that Nevada law governs the administration of the trust. See ORS 130.030(1) (giving effect to settlor's choice of law as expressed in the trust). As explained above, Nevada law prohibits insider loans by the trustee regardless of whether such loans are allowed by the terms of the trust. NRS 163.030 (2009) (no "noncorporate trustee [shall] lend funds to himself or to his relative, employer, employee, partner or other business associate"); NRS 163.160 ("[N]o act of the settlor relieves a trustee from the duties, restrictions and liabilities imposed upon the trustee by NRS 163.030 [.]").[6] *509 Because the trust unambiguously designates Nevada law as the law governing the administration of the trust, the trial court did not err in applying Nevada law to determine the questions of trust administration with which it was presented. Based on that conclusion and our rejection of Sandra's other assignments without discussion, we affirm the limited judgment.
We turn to the children's appeal from the order on WNB's petition for instructions. As explained above, as successor trustee, WNB sought instruction from the trial court on how to distribute funds in light of the money awards (1) in favor of the trust and against Sandra for $913,247 to compensate the trust for losses incurred as a result of her breaches of trust and (2) in favor of the children against Sandra and the trust for the children's attorney fees. The trial court determined that the DFK trust is a spendthrift trust under Nevada law and agreed with Sandra that NRS 166.120 prevents WNB from applying any part of the trust income to satisfy the money awards.
*188 On appeal, the children do not dispute that the DFK trust is a spendthrift trust under Nevada law, but they contend that the trial court erred in concluding that NRS 166.120 prohibits WNB from applying Sandra's beneficial interest in the trust to compensate the trust for losses resulting from her breaches as trustee.[7] Sandra defends the trial court's reasoning, noting that NRS 166.120 provides broad protection from creditors for interests in spendthrift trusts. The parties agree, however, that Nevada law applies.
NRS 166.120 provides:
"1. A spendthrift trust as defined in this chapter restrains and prohibits generally the assignment, alienation, acceleration and anticipation of any interest of the beneficiary under the trust by the voluntary or involuntary act of the beneficiary, or by operation of law or any process or at all. The trust estate, or corpus or capital thereof, shall never be assigned, aliened, diminished or impaired by any alienation, transfer or seizure so as to cut off or diminish the payments, or the rents, profits, earnings or income of the trust estate that would otherwise be currently available for the benefit of the beneficiary.
"2. Payments by the trustee to the beneficiary, whether such payments are mandatory or discretionary, must be made only to or for the benefit of the beneficiary and not by way of acceleration or anticipation, nor to any assignee of the beneficiary, nor to or upon any order, written or oral, given by the beneficiary, whether such assignment or order be the voluntary contractual act of the beneficiary or be made pursuant to or by virtue of any legal process in judgment, execution, attachment, garnishment, bankruptcy or otherwise, or whether it be in connection with any contract, tort or duty. Any action to enforce the beneficiary's rights, to determine if the beneficiary's rights are subject to execution, to levy an attachment or for any other remedy must be made only in a proceeding commenced pursuant to chapter 153 of NRS, if against a testamentary trust * * *. A court has exclusive jurisdiction over any proceeding pursuant to this section.
*189 "3. The beneficiary shall have no power or capacity to make any disposition whatever of any of the income by his or her order, voluntary or involuntary, and whether made upon the order or direction of any court or courts, whether of bankruptcy or otherwise; nor shall the interest of the beneficiary be subject to any process of attachment issued against the beneficiary, or to be taken in execution under any form of legal process directed against the beneficiary or against the trustee, or the *510 trust estate, or any part of the income thereof, but the whole of the trust estate and the income of the trust estate shall go to and be applied by the trustee solely for the benefit of the beneficiary, free, clear, and discharged of and from any and all obligations of the beneficiary whatsoever and of all responsibility therefor.
"4. The trustee of a spendthrift trust is required to disregard and defeat every assignment or other act, voluntary or involuntary, that is attempted contrary to the provisions of this chapter."
As noted above, the parties agree that Nevada law applies to the question at issue in this appeal. When we apply the substantive law of another state, if that state's appellate courts have not answered the question before us, we use that state's "statutory interpretation principles and related case law" to ascertain how courts of that state would apply its law. CACV of Colorado, LLC v. Stevens , 248 Or.App. 624, 630, 274 P.3d 859, rev. den. , 352 Or. 377, 290 P.3d 813 (2012). Like Oregon appellate courts, Nevada courts review legal questions, including matters of statutory interpretation, for errors of law. Brock v. Premier Trust, Inc. , 133 Nev. 8, 390 P.3d 646, 649 (2017).
Under Nevada law, "[t]he goal of statutory interpretation is to give effect to the Legislature's intent. To ascertain the Legislature's intent, we look to the statute's plain language. When a statute's language is clear and unambiguous, the apparent intent must be given effect, as there is no room for construction." Williams v. Dep't of Corrections , 402 P.3d 1260, 1262 (Nev. 2017) (internal quotation marks, citations, and brackets omitted). When the text is ambiguous, courts "turn to other legitimate tools of statutory interpretation, including related statutes, relevant legislative history, and prior judicial interpretations of related or comparable *190 statutes by [the Nevada Supreme Court] or other courts." Andrews v. State , 412 P.3d 37, 40 (Nev. 2018). That analysis may include consideration of common law principles. See Brock , 390 P.3d at 650 (relying extensively on Restatement (Second) of Trusts to interpret a Nevada trust statute).
Under Nevada law, a violation of NRS 163.010 to 163.200 by a trustee may be treated as a breach of trust. NRS 163.190 ("If a trustee violates any of the provisions of NRS 163.010 to 163.200, inclusive, * * * any beneficiary, cotrustee or successor trustee may treat the violation as a breach of trust."). With respect to testamentary trusts, the probate court may compel "redress of a breach of trust," NRS 153.031(I)(m), using its "full equitable powers," Diotallevi v. Sierra Dev. Co. , 95 Nev. 164, 591 P.2d 270, 272 (1979) (probate court's "full equitable powers" include the power to apply a "practical and fair method" for protecting the interests of the trust beneficiaries).
Those equitable powers historically included the power to apply a breaching trustee-beneficiary's interest in the trust to compensate the trust and other beneficiaries for losses caused by the breach of trust. Restatement of Trusts § 257 (1935) ("If a trustee who is also one of the beneficiaries commits a breach of trust, the other beneficiaries are entitled to a charge upon his beneficial interest to secure their claims against him for the breach of trust."); accord. George Gleason Bogert, Trusts and Trustees , § 191 n. 47, 206-07 (1951); Restatement (Second) of Trusts , § 257 (1959) ; Restatement (Third) of Trusts , § 104 (2003). That principle applied with equal force to spendthrift trusts:
"Spendthrift Trust. The rule stated in this Section is applicable although the interest of the trustee-beneficiary is not transferable by him or subject to the claims of his creditors. Although his ordinary creditors cannot reach his interest under the trust and apply it to the satisfaction of their claims, his interest can be impounded for the benefit of the other beneficiaries of the trust to make good any liability which he incurs for breach of trust."
Restatement of Trusts , § 257 comment f (citation omitted); see also Restatement (Second) of Trusts , § 257 comment f (similar); Restatement (Third) of Trusts , § 104 comment h *191 ("This rule applies even though the beneficiary's interest is subject to a spendthrift restraint." (Citation omitted.) ). *511 The Nevada Supreme Court recently indicated its adherence to the Restatement approach when it stated that "surcharging [the breaching trustee-beneficiary's] interest" in the trust is an appropriate remedy for a breach of trust by a trustee-beneficiary. Montoya v. Ahearn , 426 P.3d 599, 603 (Nev. 2018). Thus, if the DFK trust were not a spendthrift trust, there is little question that the trial court could order that Sandra's income interest be applied as a remedy to compensate for her breaches. The remaining question is whether a different result is required because the DFK is a spendthrift trust subject to NRS 166.120. We conclude that it is not.
The text of the statute provides that "payments," "the income," and "the interest of the beneficiary" may not be directed away from the beneficiary by voluntary or involuntary acts, including court orders; rather "the whole of the trust estate and the income of the trust estate shall go to and be applied by the trustee solely for the benefit of the beneficiary, free, clear, and discharged of and from any and all obligations of the beneficiary whatsoever and of all responsibility therefor." NRS 166.120(2), (3). Although that text is worded broadly, it is written in terms of creditors and proceedings that are external to the affairs of the trust. Because breach-of-trust proceedings differ from all other types of proceedings in that they are internal to the trust and logically precede a trustee's determination of the beneficiaries' interests for distribution purposes, it is not clear that NRS 166.120 is intended to apply to them. For additional guidance, we "turn to other legitimate tools of statutory interpretation, including related statutes, relevant legislative history, and prior judicial interpretations of related or comparable statutes by [the Nevada Supreme Court] or other courts," Andrews , 412 P.3d at 40, as well as the common law, including the Restatement (Second) of Trusts , see Brock , 390 P.3d at 650.
As explained above, all three restatements of the law of trusts recognize that a spendthrift provision does not prevent application of the rule that a breaching *192 trustee-beneficiary's interest can be applied to compensate other beneficiaries for losses incurred because of the breach of trust. Restatement of Trusts § 257 comment f; Restatement (Second) of Trusts § 257 comment f; Restatement (Third) of Trusts § 104 comment u. Moreover, since at least 1941, Nevada's law of testamentary trusts has incorporated the common law of trusts. See NRS 163.190 ; Diotallevi , 591 P.2d at 271. Given those circumstances, we conclude that the Nevada Legislature did not intend NRS 166.120 to prohibit a surcharge of the breaching trustee-beneficiary's interest as a remedy for that trustee-beneficiary's own breach of trust, and that the Nevada Supreme Court would not apply the provision that way. Rather, if the legislature had intended NRS 166.120 to abrogate the well-established common law rule of surcharge of the breaching trustee-beneficiary's interest, it would have said so explicitly.
We also note that, although NRS 166.120 creates protection for the corpus of a spendthrift trust and payments to beneficiaries, it does not displace the trustee's duty to treat all beneficiaries equally. See Ahearn v. Montoya , 393 P.3d 1090, 1094 (Nev. 2017) (noting "a trustee's duty to treat all beneficiaries equally" (citing Hearst v. Ganzi , 145 Cal.App.4th 1195, 52 Cal.Rptr.3d 473, 481 (2006) ) ). Although NRS 166.120 prohibits a trustee from "assign[ing], alien[ating], diminish[ing] or impair[ing]" the trust corpus "so as to cut off or diminish the payments, or the rents, profits, earnings or income of the trust estate that would otherwise be currently available for the benefit of the beneficiary," NRS 163.120(1), nothing suggests that it requires the trustee to protect the interest of one beneficiary in direct derogation of the interests in the trust of the other beneficiaries. Similarly, by directing that "the whole of the trust estate and the income of the trust estate shall go to and be applied by the trustee solely for the benefit of the beneficiary," NRS 163.120(3), the statute requires compliance with the terms of the trust and the duties imposed thereunder-again, including the duty to treat trust beneficiaries equally-without regard to the claims of creditors outside the trust or attempts by those creditors to attach or execute on the trust corpus or payments to a beneficiary. It *512 does not require the trustee to direct payments to one beneficiary at the expense of others. *193 A California appellate court addressed the same question in a case where the trust itself, rather than a statute, contained text similar to the text of NRS 166.120. Chatard v. Oveross , 179 Cal.App.4th 1098, 1100-01, 101 Cal.Rptr.3d 883, 886 (2009), rev. den. , Feb. 10, 2010 (interpreting a trust instrument providing that "[t]he interest of any beneficiary in the principal or income of any trust created by this instrument shall not be subject to claims of his or her creditors, or others, or liable to attachment, execution or other process of law"). The court concluded that surcharge of the breaching trustee-beneficiary's interest was not prohibited, and explained as follows:
"Reasonably construed, the language of the spendthrift provision here suggests protection against the claims of persons foreign to the trust-'creditors, or others'-who might use a writ of 'attachment, execution or other process of law' to satisfy a claim from a beneficiary's interest. The language does not reasonably refer to the claims of fellow beneficiaries relating to a breach of trust, which might be satisfied, in the exercise of the probate court's equitable power, by surcharging the interest of the trustee-beneficiary in the distribution of trust assets. In short, absent clear language to the contrary, we decline to read the spendthrift clause so as to permit the perverse result of depriving the court of its equitable power to surcharge the interest of dishonest trustee-beneficiary to compensate other beneficiaries for breaches of the trust."
Chatard , 179 Cal.App.4th at 1107, 101 Cal.Rptr.3d at 890.
The same reasoning applies here and leads us to conclude that NRS 166.120 does not prohibit WNB from applying Sandra's interest in the trust to compensate the trust for losses that the trial court had previously found were caused by her breaches of trust. Accordingly, we reverse the order on the petition for instructions and remand for the trial court, in the exercise of "its full equitable powers," to instruct WNB on the appropriate distribution of the trust income. Diotallevi , 591 P.2d at 272.
In A157640, affirmed. In A159957, reversed and remanded.

The petition also named E. L. King III and Sarah King; Alexandra King as trustee of the FBN Management Trust; Cameron individually and as trustee of the 78th Place Trust and the Hamilton House Trust; and Jamie Sandhurst individually and as trustee of the 78th Place Trust. Like Cameron, Alexandra King is a child of Sandra; Jamie Sandhurst is a child of Cameron and, consequently, Sandra's grandchild. The trial court dismissed all claims against E. L. King III and Sarah King and Alexandra King, and Cameron in their personal capacities. Those dismissals are unchallenged on appeal.
Although Alexandra King appears in both appeals, represented jointly with Sandra, she does not raise separate arguments; consequently, we do not distinguish her from Sandra for purposes of this opinion. E. L. King III, Sarah King, Cameron, and Sandhurst do not appear on appeal.

The court later entered a general judgment disposing of one remaining matter and awarding (1) attorney fees against Sandra in favor of the trust and (2) attorney fees against the trust and against Sandra in favor of the children. No party appealed the general judgment.

The children raise two cross-assignments of error that they request that we reach only if we grant any of the relief sought by Sandra. Because we do not grant any of the relief sought by Sandra, we do not address those cross-assignments.

That provision originated in the Uniform Trusts Act (1937), which the Nevada Legislative Assembly enacted in 1941. See NRS 163.010 ; 1941 Nev. Laws, ch. 136.
The current version of that statute allows loans by a noncorporate trustee to herself and her family members under limited circumstances that are not present in this case. NRS 163.030(2) (allowing such loans (1) when the trust instrument provides for them and all of the beneficiaries consent or receive specified notice and do not object and (2) when the loans are approved by a court).

In Oregon, which, like 32 other states, has enacted the Uniform Trust Code, insider transactions are permitted if "[t]he transaction was authorized by the terms of the trust," among other circumstances. ORS 130.655(2) ; see also ORS 130.020(2)(b) (providing that the terms of the trust "prevail over the provisions of this chapter except," among other exceptions, "[t]he duty of the trustee to act in good faith and in accordance with the purposes of the trust"). The trial court did not, and we do not, express any opinion on whether the loans were breaches of trust under Oregon law.

To the extent that Sandra could be understood to assert that Minnesota law governs the duties of the trustee, we conclude that the text of section 6.10 remains unambiguous when read in context with the text regarding the Minnesota statute. Section 6.2 provides, "The Trustee shall have all of the powers enumerated in section 501B.81, Minnesota Statutes, a copy of which is attached as Exhibit B, and the powers enumerated in said section are by this reference incorporated herein." That text incorporates "the powers enumerated" in the Minnesota statute with the same effect as if they were written in the text, but it does not purport to choose Minnesota as the jurisdiction whose law controls the trust administration. See Black's Law Dictionary 884 (10th ed. 2014) (defining "incorporation by reference" as "[a] method of making a secondary document part of a primary document by including in the primary document a statement that the secondary document should be treated as if it were contained within the primary one").

In a second assignment of error, the children contend that, under another statute, WNB was required to pay one half of the attorney fee award from trust income. They explain that we "need only reach the second assignment of error if [we reject] the first." Because, as explained below, we conclude that the court erred as asserted in the first assignment, we do not address the second assignment.