[No. B213392. Second Dist., Div. Four. Nov. 30, 2009.]

JOYCE CHATARD, Plaintiff and Appellant, v.
GREG OVEROSS, as Trustee, etc., Defendant and Respondent.

COUNSEL

Panitz & Kossoff and Kenneth W. Kossoff for Plaintiff and Appellant.

Berman & Berman, Ronald Berman; Oldman, Cooley, Sallus, Gold, Birnberg & Coleman, Marc L. Sallus and Mary-Felicia Apanius for Defendant and Respondent.

OPINION

WILLHITE, J.—

## INTRODUCTION

This appeal raises the issue whether the beneficiary of a *spendthrift* trust who also acts as trustee and commits a breach of trust causing financial harm to the trust can have her interest in the trust estate impounded to satisfy a claim arising from her misfeasance. Because the damage resulting from the trustee's breach of her fiduciary duty will otherwise be sustained by the beneficiaries, we hold that the trustee's interest can be reached to satisfy the

claim notwithstanding the existence of the spendthrift provision. We therefore affirm the trial court's order directing that its surcharge order upon former trustee appellant Joyce Chatard be satisfied from her distributive share of the trust estate.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

In 1989, Frederic and Vera Chatard, husband and wife, created the Chatard Family Trust (the Trust), naming themselves as beneficiaries. The Trust provides for the distribution of income and principal to them during their joint lifetimes. Upon the death of the first of them, the Trust divides into two subparts, Trusts A and B.[2] Income and principal from each subpart are distributed to the surviving spouse. Upon the death of the surviving spouse, the assets in Trust B are distributed to the settlors' three adult children (Joyce, appellant herein, David, and Jeanee) and the four children of the settlors' deceased son Douglas.[3] Each of the settlors' three adult children receives outright a gift of one-fourth of Trust B.[4] As for Douglas's four children, each receives an equal share of one-fourth of Trust B unless one of them is under 30 years old at the time the first settlor died. In that event (which occurred here), one-fourth of Trust B is held in trust for all four of Douglas's children, with the trustee (who was ultimately appellant, Joyce) having the discretion to distribute income and principal to each of them. When none of Douglas's children is younger than 30, the trustee distributes the remainder of the Trust estate to them.[5]

The Trust contains a spendthrift provision that reads: *"The interest of any beneficiary in the principal or income of any trust created by this instrument shall not be subject to claims of his or her creditors, or others, or liable to attachment, execution or other process of law*, and no beneficiary shall have

---

[1] Before the parties submitted their briefs, respondent (the interim successor trustee) moved to augment the record. The augmentation consisted of three petitions filed in the trial court regarding trust administration and the trial court's statement of decision rendered after a five-day trial. Appellant opposed the augmentation. We denied the motion "without prejudice, subject to a particularized showing that the documents referred to in the motion [to augment] are relevant to the issues raised on appeal." Having reviewed the parties' briefs and the record, it is now apparent that the documents contained in the motion are relevant to this appeal. Respondent's May 22, 2009 motion to augment the record is therefore granted. Accordingly, we rely, in part, upon the augmentation to set forth the pertinent facts.

[2] The Trust also calls for a creation of Trust C upon the death of the first settlor if sufficient assets are available. They were not so Trust C was never created.

[3] For purposes of clarity, we refer to the involved individuals by their first names.

[4] Appellant is not a beneficiary of Trust A. Trust A is divided into equal thirds; one-third goes to David, one-third goes to Jeanee, and one-third goes to Douglas's children subject to the same distribution provisions as the distribution of Trust B.

[5] Two of Douglas's children are still under the age of 30.

any right to encumber, hypothecate or alienate his or her interest in the trust in any manner; provided, however, that this shall not be construed to restrict the general power of appointment granted the surviving Trustor over Trust A as set forth hereinabove. The Trustee may, however, deposit to any bank designated by the beneficiary, to his or her credit, income or principal payable to such beneficiary." (Italics added.)

Frederic died in 1995 and Vera died in September 2002. Vera's death triggered the duty to distribute the remaining trust assets to the beneficiaries. At that point, the assets consisted of cash, securities and two parcels of property. One property is residential (the San Pablo property) and the other is commercial (the Sunset property). Shortly after Vera's death, appellant moved into the San Pablo property.

In February 2003, appellant began serving as trustee of the entire trust (subparts A and B). Over the next several years, disputes arose between her and the other beneficiaries. One involved whether the Trust should sell or retain ownership of the real estate holdings. Another disagreement concerned appellant's administration of the Trust. Consequently, David and Jeanee (appellant's two adult siblings) filed, at different times, petitions requesting that the two properties be sold; that appellant furnish an accounting; and that appellant be removed as trustee and an interim successor trustee be appointed. The trial court granted all of the petitions.

In regard to the two parcels of realty owned by the Trust, a public auction was conducted in January 2007 at which appellant successfully bid on both properties. She put down deposits on each parcel but then did not complete the purchases. Thereafter, the interim successor trustee successfully moved for orders to vacate the sale of both properties to appellant, to bar her from bidding in any subsequent sales, to withhold her deposits pending determination of the damages the Trust had suffered as a result of her breach of contract, and to initiate an unlawful detainer action to remove her from the San Pablo property. Eventually, the Trust sold the Sunset property for the same price appellant had offered, but was compelled to sell the San Pablo property for $90,000 less than appellant's offer.

In June 2007, a five-day court trial was conducted to determine, "the myriad of controverted *Trust* issues in this matter."[6] Appellant, among others, testified. The trial court did not find her credible.[7] The trial court's statement

---

[6] A reporter's transcript of the trial is not included in the record on appeal.

[7] The statement of decision recites that the court found "that the trustee, Joyce Chatard, lacked credibility with respect to some of her testimony."

of decision sets forth multiple breaches of appellant's obligation to act as a fiduciary in her capacity as trustee. She breached her duty to make the trust property productive by failing to rent or to pay rent on the San Pablo property that she occupied. She awarded herself excessive compensation as trustee. She inappropriately used trust assets to pay personal expenses. She unnecessarily incurred attorney fees on behalf of the Trust by hiring an attorney to oppose the other beneficiaries' well-founded petitions to remove her as trustee and to surcharge her for mismanagement.[8] And she failed to distribute David and Jeanee's share of the Trust assets within a reasonable time. The trial court therefore surcharged appellant $244,489, payable to Trust B and $88,762.83, payable to Trust A.[9] In addition, the trial court found that because appellant's opposition to David's and Jeanee's petitions for an accounting and to remove her as trustee was "without reasonable cause and in bad faith," David and Jeanee were, based upon Probate Code section 17211, subdivision (b),[10] entitled to an award against appellant for $100,368.11, representing the legal fees and costs they had incurred in litigating their successful petitions. In January 2008, the trial court filed a "judgment after trial" incorporating all of these orders.

In July 2008, the interim successor trustee, relying upon the trial court's January 2008 judgment, filed an amended first and final account and petition requesting that appellant's $477,239.10 share of Trust B be reduced by the $333,251.83 surcharge due Trusts A and B and the $100,368.11 owed to David and Jeanee for legal fees and costs. This left approximately $44,000 to be distributed to appellant from Trust B. (Appellant is not a beneficiary of Trust A (see fn. 4, *ante*).)

---

[8] Contrary to what respondent's brief suggests, the trial court did not make any specific finding about the damages the Trust had suffered because appellant had failed to purchase the Trust realty as she had agreed to do. However, pursuant to a December 2007 petition filed by the interim successor trustee, the trial court directed that $38,973.66 of appellant's deposit on the two sales be used to pay trustee, legal and escrow fees; $54,500 was to be paid to Trust B; and the remainder of the money was to be returned to appellant.

[9] The trial court also ordered Trust B to reimburse Trust A $71,691.25 because some Trust B expenses had been paid by Trust A.

[10] All undesignated statutory references are to the Probate Code.
Section 17211 provides:
"(a) If a beneficiary contests the trustee's account and the court determines that the contest was without reasonable cause and in bad faith, the court may award against the contestant the compensation and costs of the trustee and other expenses and costs of litigation, including attorney's fees, incurred to defend the account. The amount awarded shall be a charge against any interest of the beneficiary in the trust. The contestant shall be personally liable for any amount that remains unsatisfied.
"(b) If a beneficiary contests the trustee's account and the court determines that the trustee's opposition to the contest was without reasonable cause and in bad faith, the court may award the contestant the costs of the contestant and other expenses and costs of litigation, including attorney's fees, incurred to contest the account. *The amount awarded shall be a charge against the* compensation or other *interest of the trustee in the trust.*" (Italics added.)

Litigation ensued about the propriety of reducing appellant's distributive share. Appellant conceded that the $100,368.11 in attorney fees and costs that the court ordered her to pay David and Jeanee could be taken from her portion of the Trust. However, after that deduction, appellant sought the remainder of her distributive share, claiming that she would reimburse the Trust for the surcharge. She contended that because the Trust contained a spendthrift provision, her beneficial interest in the Trust could not be used to satisfy the surcharge.

After receiving additional briefing from the parties, the trial court rejected appellant's arguments. It approved the interim successor trustee's first and final account and ruled that "[appellant's] distribution from the Trusts shall be offset by the amount of the surcharge against her. The . . . spendthrift provision of the Trust does not apply to this distribution."[11]

This appeal follows. (§ 1300, subds. (b), (c).)

## DISCUSSION

Relying upon the Trust's spendthrift provision, appellant challenges the trial court's order that the surcharge be taken from her distributive share of Trust B. She does *not* challenge the trial court's earlier order finding that she had breached her fiduciary duties and surcharging her for those breaches. Nor does she challenge the trial court's order that David and Jeanee can recover their attorney fees and costs from her distributive share.

██ "A spendthrift trust is created where the settlor gives property in trust for another, and provides that the beneficiary cannot assign or otherwise alienate his or her interest, and that it shall not be subject to the claims of the beneficiary's creditors." (13 Witkin, Summary of Cal. Law (10th ed. 2005) Trusts, § 151, p. 715, italics omitted; see also 60 Cal.Jur.3d (2005) Trusts, §§ 127–131, pp. 194–199.) Spendthrift trusts are authorized by statute. (§§ 15300, 15301.)

██ The issue here is whether the Trust's spendthrift provision precludes taking from appellant's distributive share of the Trust the amount that she was surcharged for breaching her duties as trustee. Section 257 of the

---

[11] The trial court also ordered the interim successor trustee to distribute all other trust shares to the beneficiaries, subject to retaining a reserve to pay taxes.

Restatement Second of Trusts, entitled "Impounding Share of Trustee-beneficiary" and published in 1959, directly addresses this situation.[12] It provides: "If a trustee who is also one of the beneficiaries commits a breach of trust, the other beneficiaries are entitled to a charge upon his beneficial interest to secure their claims against him for the breach of trust, unless the settlor manifested a different intention."[13]

Comment f to section 257 of the Restatement Second of Trusts explains the section's applicability to a spendthrift trust. It provides: "*Spendthrift trust.* The rule stated in this Section is applicable although the interest of the trustee-beneficiary is not transferable by him or subject to the claims of his creditors, unless the settlor has manifested a different intention. See § 152 [defining spendthrift trust]. Although his ordinary creditors cannot reach his interest under the trust and apply it to the satisfaction of their claims, *his interest can be impounded for the benefit of the other beneficiaries of the trust to make good a liability which he incurs for breach of trust, unless the settlor has manifested a different intention.* The rule is applicable to statutory spendthrift trusts. [¶] If, however, the settlor has manifested an intention that the interest of the trustee-beneficiary should not be impounded for the benefit of the other beneficiaries of the trust to make good a liability for breach of trust, it cannot be impounded. The settlor who has given the other beneficiaries their interests can restrict those interests by denying them power to reach the interest of the trustee-beneficiary to make good a breach of trust committed by him. This is true even in States in which it is held to be against public policy to prevent ordinary creditors from reaching the interest of a beneficiary. On the question whether the settlor has manifested such an intention, various factors may be relevant, as, for example, the character of the breach of trust, whether wilful or negligent; the relationship between the settlor and the trustee-beneficiary and the other beneficiaries. *The question is whether in view of all the circumstances the settlor would have desired to protect the trustee-beneficiary, not only as against the claims of ordinary*

---

[12] California trust law is largely derived from the Restatement rules. (13 Witkin, Summary of Cal. Law, *supra*, Trusts, §§ 12 & 17, pp. 579–580 & 583–585.)

[13] The American Law Institute is in the process of producing the Restatement Third of Trusts to supersede and replace the Second Restatement. (13 Witkin, Summary of Cal. Law, *supra*, Trusts, § 12, pp. 579–580.) The new provisions relating to the principle set forth in section 257 of the Restatement Second of Trusts have not been completed. However, comment a(2) to section 59 ("Spendthrift Trusts: Exceptions for Particular Types of Claims") of the Restatement Third of Trusts explains: "[T]he interest of a beneficiary . . . who—by breach of duty as trustee or otherwise—causes harm to the trust estate and the beneficial interests of others, may ordinarily be reached by set-off or impounding to satisfy the resulting obligation, *even in the case of a spendthrift trust.* See more generally Chapter 20 [which has not yet been published]." (Rest.3d Trusts, § 59, com. a(2), p. 396, italics added.)

*creditors, but also against the claims of the other beneficiaries for breach of trust."* (Rest.2d Trusts, § 257, com. f, pp. 649–650, second & third italics added.)

■ In this case, nothing in the Trust document directly states that the settlors (appellant's parents) intended to insulate appellant's share of the Trust in the event that she became liable to the other beneficiaries (the settlors' other children and grandchildren) because she breached her fiduciary duty as trustee. Appellant's multiple breaches of her fiduciary obligations resulted in significant financial loss to the Trust (more than $325,000). Some of these breaches involved moral turpitude: using trust assets to pay personal expenses, paying herself excessive compensation as trustee, and residing in Trust property without paying rent to the Trust. These actions considerably reduced the Trust's value. If the surcharge is not taken from appellant's share *before* the assets are distributed on a pro rata basis, the other beneficiaries will be compelled to share in the reduction of value caused solely by appellant's misfeasance. Further, if the surcharge is not taken from appellant's share, it is reasonable to assume in light of appellant's misconduct as trustee that the beneficiaries would then be required to hire counsel and fund litigation to compel her (she is now apparently living in Florida) to comply with the trial court's surcharge order. Nothing in the Trust indicates that the settlors intended to protect appellant from the consequences of her misconduct to the detriment of the other beneficiaries.

That the settlors included a broad spendthrift provision barring claims of "creditors, or others" and stating that the beneficiary's interest is not "liable to attachment, execution or other process of law" does not change our conclusion.

■ For one thing, a spendthrift provision protects the income and principal interests of the beneficiaries from third party claims as long as the income or principal is properly held by the Trust. A fair reading of the Trust indicates that the settlors' primary intent in creating the Trust was to set up a mechanism to provide them with financial support during their lifetimes. The Trust did so by distributing income generated by trust property as well as trust principal to them for 13 years (from 1989 to 2002). In that context, it is reasonable to infer that the purpose of the spendthrift provision was to protect *the settlors* by precluding any third party (particularly a creditor) from using any means to reach their interests in trust property before they received it. While the settlors were alive, the interest of the other beneficiaries was, at most, a contingency because it could not be established with any certainty what assets would remain after both settlors died. (See Code Civ. Proc., § 699.720, subd. (a)(9) ["A contingent remainder, executory interest, or other interest in property that is not vested" is not subject to execution to satisfy a

judgment].) Once both settlors died, the protections of the spendthrift provision primarily inured to the benefit of Douglas's four children who will receive (as did the settlors) support from the Trust until the youngest of them reaches the age of 30. (See fn. 5, *ante.*) But significantly, in regard to the settlors' three adult children (including appellant), the Trust provides upon the settlors' deaths for outright gifts as opposed to an income stream of support during their lifetime. In that context, the spendthrift provision is of lesser significance because it only precludes a third party from reaching those three beneficiaries' interests in the discrete period between the second settlor's death and distribution of the Trust estate to them.

■ Appellant contends that the language of the spendthrift provision—in particular, its protection against the claims of "creditors, or others"—compels a different conclusion. We disagree. In relevant part, the spendthrift clause states that "[t]he interest of any beneficiary . . . shall not be subject to claims of his or her creditors, or others, or liable to attachment, execution or other process of law." This language does not manifest an intention to depart from the general rule that a trustee-beneficiary's interest in the trust "can be impounded for the benefit of the other beneficiaries of the trust to make good a liability he incurs for breach of trust." (Rest.2d Trusts, § 257, com. f, p. 650.) The relevant "question is whether in view of all the circumstances the settlor would have desired to protect the trustee-beneficiary, not only against the claims of ordinary creditors, but also against the claims of the other beneficiaries" for breach of the trust. (*Ibid.*) Reasonably construed, the language of the spendthrift provision here suggests protection against the claims of persons foreign to the trust—"creditors, or others"—who might use a writ of "attachment, execution or other process of law" to satisfy a claim from a beneficiary's interest. The language does not reasonably refer to the claims of fellow beneficiaries relating to a breach of trust, which might be satisfied, in the exercise of the probate court's equitable power, by surcharging the interest of the trustee-beneficiary in the distribution of trust assets. In short, absent clear language to the contrary, we decline to read the spendthrift clause so as to permit the perverse result of depriving the court of its equitable power to surcharge the interest of a dishonest trustee-beneficiary to compensate other beneficiaries for breaches of the trust.

Our conclusion that the spendthrift provision does not preclude reaching appellant's distributive share is consistent with our opinion in *Estate of Ivey* (1994) 22 Cal.App.4th 873 [28 Cal.Rptr.2d 16]. There, the trial court, relying upon Code of Civil Procedure section 128.5, charged a beneficiary's share in a spendthrift trust for expenses and attorney fees incurred by the trustee and other beneficiaries in opposing the beneficiary's frivolous and bad faith objections to the trustee's accounting. (22 Cal.App.4th at pp. 882–883.) Although the trust had a spendthrift provision, the trial court reasoned that it would be inequitable to the other income beneficiaries to have the trust bear the expenses.

On appeal, we first upheld the trial court's authority to render the order because the principle that "a probate court has equitable power to charge one beneficiary's share of a trust for frivolous litigation against the trust is supported by treatises." (*Estate of Ivey, supra*, 22 Cal.App.4th at p. 883.) Next, we rejected appellant's claim that the trust's spendthrift provision undercut the trial court's ability to make the contested order. We explained: "The award of sanctions here, although based on Code of Civil Procedure section 128.5, was made in the context of a probate proceeding involving administration of this very trust. It was appellant's bad faith conduct toward the administration of this trust which caused unnecessary expenses to be incurred. Under the court's equitable supervision of the trust, the court may order the sanctions payable from appellant's share." (*Id.* at p. 885.) We reasoned that to apply the protections of the spendthrift provision "would inequitably require that respondents bear most of the cost of appellant's conduct toward the trust. Although decedent intended to protect the beneficiaries from folly toward other creditors [by including a spendthrift provision], he undoubtedly did not intend that one beneficiary, through wilful, frivolous, and bad faith conduct *toward the trust*, could with near impunity require the other income beneficiaries to deplete the distributable trust income on unnecessary legal expenses. In other words, to allow appellant an economic advantage to pursue frivolous litigation necessarily reduces the trust income available to the other beneficiaries. It is inconceivable that [the settlor] contemplated or would tolerate such a bizarre and unjust result." (*Id.* at p. 886.)

By a parity of reasoning, we conclude that the settlors never intended that the spendthrift provision to operate so that appellant could, with impunity, abuse her authority as trustee, cause financial damage to the Trust, and reduce the share of the other beneficiaries. Therefore, consistent with section 257 of the Second Restatement of Trusts, the only reasonable conclusion is that the settlors expected that any surcharge based upon wrongful conduct would be satisfied from appellant's distributive share so as to make the other beneficiaries whole. The trial court therefore acted well within its equitable authority in making the contested order.

Appellant's contrary arguments are not persuasive.

First, she advances an argument based upon legislative intent. She points out that in 1996, the Legislature enacted section 17211 (see fn. 10, *ante*). This statute is the authority for the trial court's award to David and Jeanee of attorney fees and costs from appellant's distributive share based upon its finding that appellant's opposition to their petitions to compel an accounting and to remove her as trustee was without reasonable cause and in bad faith. (As noted, appellant does not challenge this award or the order taking it from

her distributive share.) Appellant essentially argues that the enactment of section 17211 indicates that the Legislature intended to permit an individual's distributive share in a spendthrift trust to be reached only to compensate for attorney fees and costs, thus depriving the trial court of the authority to order that a surcharge based upon trustee misconduct be satisfied from a beneficiary's interest in a spendthrift trust. The statute's legislative history does not support this argument.

Section 17211, enacted in 1996, was one of many changes included in Senate Bill No. 392 (1995–1996 Reg. Sess.). The bill was a "probate omnibus bill containing various noncontroversial technical and substantive changes to estate planning, trust, and probate law." (Sen. Rules Com., Off. of Sen. Floor Analyses, analysis of Sen. Bill No. 392 (1995–1996 Reg. Sess.) as amended Jan. 12, 1996, p. a.) The bill was based upon suggestions from organizations such as the California Law Revision Commission and the California State Bar. (Sen. Com. on Judiciary, 3d reading analysis of Sen. Bill No. 392 (1995–1996 Reg. Sess.) as amended Aug. 15, 1996, p. 1.)

The Estate Planning, Trust and Probate Law Section of the California State Bar proposed what ultimately was enacted as section 17211 for the following reasons: "Existing law provides that, in the context of a probate estate administration, if there is a challenge of a personal representative's account which is brought without reasonable cause and in bad faith, the court may award against the contestant the compensation and costs of the personal representative and other expenses and costs of litigation, including attorney's fees, incurred to defend the account. Similarly, if the personal representative defends a challenge to an account without reasonable cause and in bad faith, the court may award the expenses and costs to the challenger. (Probate Code Section 11003.)[14] It is advisable to enact a counterpart to these provisions which would apply in settlement of a trustee's account. Without a specific statutory counterpart in the trust law, parties challenging or defending a trustee's accounts are governed by Civil Code Procedure Sections 128.5 et seq. which provide, generally, that a trial court may order a party or the party's attorney, or both to pay any reasonable expenses incurred by another

---

[14] Section 11003 provides:

"(a) If the court determines that the contest was without reasonable cause and in bad faith, the court may award against the contestant the compensation and costs of the personal representative and other expenses and costs of litigation, including attorney's fees, incurred to defend the account. The amount awarded is a charge against any interest of the contestant in the estate and the contestant is personally liable for any amount that remains unsatisfied.

"(b) If the court determines that the opposition to the contest was without reasonable cause and in bad faith, the court may award the contestant the costs of the contestant and other expenses and costs of litigation, including attorney's fees, incurred to contest the account. The amount awarded is a charge against the compensation or other interest of the personal representative in the estate and the personal representative is liable personally and on the bond, if any, for any amount that remains unsatisfied."

party as a result of bad faith actions or tactics that are frivolous or solely intended to cause unnecessary delay. Frivolous is defined as 'totally and completely without merit or for the sole purpose of harassing an opposing party.' The standards of CCP Sections 128.5 et seq. appear to be more narrow than those incorporated into Probate Code Section 11003. In the context of a challenge of a fiduciary's account, the broader standards of Section 11003 should be adopted and should apply whether the contest occurs during the administration of a probate estate or upon settlement of a trustee's account." (Cal. State Bar Estate Planning, Trust & Prob. Law Section, Legis. Proposal, Sen. Bill No. 392 (1995–1996 Reg. Sess.) p. 1, excerpted from Sen. Com. on Judiciary, bill file, Sen. Bill No. 392 (1995–1996 Reg. Sess.).)

 Thus, in enacting section 17211, the Legislature intended to discourage frivolous litigation about a trustee's accounting and to apply the same standard to that litigation as it applied to litigation about estate administration.[15] Significantly, the legislative history contains *no* references to a spendthrift thrust. That is, whether a claim for attorney fees and costs could be satisfied from a spendthrift trust was an issue that was never directly addressed. Instead, the authority to charge an individual's share in a spendthrift trust for frivolous litigation is found in the broad language of section 17211: "The amount awarded shall be a charge against *any interest of the beneficiary in the trust*" and "The amount awarded shall be a charge against *the . . . interest of the trustee in the trust.*" (§ 17211, subds. (a), (b), italics added; see fn. 10, *ante,* for full text of statute.) Consequently, we conclude that nothing in the statute's legislative history supports appellant's argument that in enacting section 17211 the Legislature intended to exempt a beneficiary's interest in a spendthrift trust from being used to satisfy a surcharge based upon the beneficiary's wrongful conduct as a trustee.

Appellant next relies upon two cases to support her argument that the spendthrift provision precluded taking the surcharge from her distributive share: *Estate of Edwards* (1932) 217 Cal. 25 [17 P.2d 116] (*Edwards*) and *County Nat. Bank etc. Co. v. Sheppard* (1955) 136 Cal.App.2d 205 [288 P.2d 880] (*Sheppard*). Both cases involved interpretation of the same testamentary trust. The trust provided for the maintenance of the decedent's wife and four children by distributing a pro rata share of the income generated by the trust to each of them. (*Edwards, supra,* 217 Cal. at pp. 26–27.) The trust included the following spendthrift provision: " 'Each and all of such payments are made for the sole and separate uses of the beneficiaries, and *the same are not to be deemed or held liable in any possible event for the debts,* control or

---

[15] We note also that two years earlier, the Legislature enacted Code of Civil Procedure section 128.7. Code of Civil Procedure section 128.7 superseded Code of Civil Procedure section 128.5 as a tool to deter frivolous litigation in actions filed on or after January 1, 1995. (*Clark v. Optical Coating Laboratory, Inc.* (2008) 165 Cal.App.4th 150, 164–165 [80 Cal.Rptr.3d 812].)

engagements *of such beneficiaries* . . . and are not to be subject to any transfer, mortgage, pledge or assignment by them or either or any of them.' " (*Id.* at p. 26, italics added.)

In *Edwards*, the issue was whether the beneficiaries' debts to the settlor could be satisfied from their respective shares of the income distributed to them. The problem arose because three of the settlor's children had incurred debts to him after he had executed the will creating the testamentary trust. Subsequently, judgments were obtained against each of them based upon those debts. The trustee intended to withhold the payments due those three beneficiaries and to apply those payments to satisfy the judgments.

The Supreme Court found that the clear language of the spendthrift provision precluded such an action. It explained: " 'No room is left which will permit the reading into [the spendthrift] provision of the words "except debts due to me" or their equivalent, and to sustain the contention of [the trustee] the clause would have to be construed as though it contained such an exception.' " (*Edwards, supra*, 217 Cal. at p. 28.)

In addition, the Supreme Court reasoned that a contrary conclusion would defeat the settlor's intent. It explained that because the trust was " 'one for the maintenance of [the settlor's] wife and children, and it appears to have been [the settlor's] intent . . . to provide a sum for the support of each of his children without offset or retainer in any possible event. When the [settlor] consented to his sons becoming indebted to him he did so in the light and knowledge of his testamentary provision that their distributive shares under the trust for which he had made provision in his will would not be subject to being diminished by reason of their debts "in any possible event", and the additional fact that after [his three sons incurred their respective obligations] no change was made in his will further indicates [his] intent . . . that there be no exception to the exemption of the distributive shares from any reduction by reason of any indebtedness.' "[16] (*Edwards, supra*, 217 Cal. at p. 28.)

*Sheppard, supra*, 136 Cal.App.2d 205 arose after the death of the settlor's widow. The trust provided for the trustee to now distribute one-half of the

---

[16] The holding in *Edwards* is consistent with section 251A of the Restatement Second of Trusts. That section provides: "If a testator leaves property in trust and a beneficiary of the trust was indebted to the testator, the interest of the beneficiary in the trust estate is subject to a charge for the amount of his indebtedness, *unless the testator* manifested an intention to discharge the debt, or *manifested an intention that the beneficiary should be entitled to enjoy his interest even though he should fail to pay his indebtedness.*" (Italics added.) Comment b explains, in relevant part: "*Spendthrift trust.* If it is provided in the will that the interest of the beneficiary should be free from the claims of his creditors and should not be assignable by him, the inference is that the testator intended that the beneficiary should be entitled to enjoy his interest even though he should fail to pay his indebtedness. This inference, however, may be overcome by evidence of a contrary intention." (Rest.2d Trusts, § 251A, com. b, p. 635.)

trust principal on a pro rata basis to the settlor's children. (*Id.* at pp. 208, 215–216.) The judgments against the settlor's three children had been periodically renewed and were part of the corpus of the trust. (*Id.* at p. 209.) The issue was whether the trustee could deduct those judgments from the distribution *of the principal* to those beneficiaries. The appellate court concluded that action was proper because by its express language, the spendthrift provision applied only to payments of income during the beneficiaries' lifetimes. (*Id.* at p. 216.) The court reasoned that had the settlor "desired to make this distribution of principal also subject to spendthrift provisions, he could have said so. He did not do so." (*Ibid.*) The court therefore concluded that the venerable principle of a trustee's "right of retainer" applied. That is, the trustee, unfettered by the spendthrift provision, can deduct from the beneficiary's share of the principal the amount the beneficiary owes the trust estate. (See, in general, 13 Witkin, Summary of Cal. Law, *supra*, Trusts, § 143, pp. 707–708.)[17] As *Sheppard* explained: "It would be unfair and inequitable to the others interested in the estate to allow a beneficiary to receive the fruits of an estate and at the same time to escape the reimbursement of his indebtedness to the estate." (*Sheppard, supra*, 136 Cal.App.2d at p. 219.)

These two cases do not assist appellant. They address only whether a beneficiary's interest in a testamentary spendthrift trust is subject to a claim for a debt owed by the beneficiary to the settlor. *Edwards* concluded that the spendthrift provision precluded deducting the debt from the income paid to the beneficiaries; *Sheppard*, on the other hand, concluded that given the limited scope of the spendthrift provision, the trustee could deduct the debt from the distribution of principal. Neither of the cases dealt with the issue presented here: whether a beneficiary's distributive share is liable for a surcharge imposed upon the beneficiary for misconduct as a trustee.

■ Lastly, appellant urges that even if her distributive share could be impounded, there are statutory limitations on the ability to reach it that were not met. She claims that first the interim successor trustee was required to comply with Code of Civil Procedure section 709.010, subdivision (b). That statute requires a judgment creditor to petition the probate court before it can

---

[17] Section 251 of the Restatement Second of Trusts provides: "If a beneficiary is under a liability to the trustee as such, his interest in the trust estate is subject to a charge for the amount of his liability." Comments a and b to the section explain: "This is an application of the general principle that a person who is entitled to participate in a fund in which other persons have an interest and who is also bound to contribute to the same fund cannot receive the benefit without discharging the obligation. [¶] . . . Where the interest of a beneficiary of a trust is subject to a charge, the trustee can properly refuse to pay him the amount to which he would otherwise be entitled without deducting the amount for which he is chargeable." (Rest.2d Trusts, § 251, coms. a, b, p. 633.)

satisfy a money judgment from a judgment debtor's interest in a trust.[18] Within the meaning of that statute, a judgment creditor is "the person in whose favor a judgment is rendered or, if there is an assignee of record, means the assignee of record. Unless the context otherwise requires, the term also includes the guardian or conservator of the estate, personal representative, or other successor in interest of the judgment creditor or assignee of record." (Code Civ. Proc., § 680.240.) Appellant next argues, citing Probate Code section 15306.5, that even had the interim successor trustee complied with Code of Civil Procedure section 709.010, he could have reached no more than 25 percent of her interest in the spendthrift trust.[19] Appellant raised this statutory argument below but the trial court's order did not specifically address it.

We rejected a similar argument in *Estate of Ivey, supra,* 22 Cal.App.4th 873. As set forth earlier, in *Estate of Ivey,* the probate court had, based upon Code of Civil Procedure section 128.5, sanctioned a beneficiary for frivolous litigation tactics. The probate court ordered the sanctions taken from the beneficiary's interest in a spendthrift trust. On appeal, one of the beneficiary's arguments was that the other beneficiaries were "judgment creditors . . . required to treat the probate court's order as an ordinary judgment and then enforce their judgment pursuant to Code of Civil Procedure section 709.010, and subject to the severe limitations of Probate Code sections 15300[20] and 15306.5." (22 Cal.App.4th at p. 885.) We disagreed. We held that the beneficiaries could proceed to enforce the trial court's order "independent of

---

[18] Code of Civil Procedure, section 709.010, subdivision (b) provides: "The judgment debtor's interest as a beneficiary of a trust is subject to enforcement of a money judgment only upon petition under this section by a judgment creditor to a court having jurisdiction over administration of the trust as prescribed in Part 5 (commencing with Section 17000) of Division 9 of the Probate Code. The judgment debtor's interest in the trust may be applied to the satisfaction of the money judgment by such means as the court, in its discretion, determines are proper, including but not limited to imposition of a lien on or sale of the judgment debtor's interest, collection of trust income, and liquidation and transfer of trust property by the trustee."

[19] Section 15306.5 provides, in relevant part:

"(a) Notwithstanding a restraint on transfer of the beneficiary's interest in the trust under Section 15300 or 15301, and subject to the limitations of this section, upon a judgment creditor's petition under Section 709.010 of the Code of Civil Procedure, the court may make an order directing the trustee to satisfy all or part of the judgment out of the payments to which the beneficiary is entitled under the trust instrument or that the trustee, in the exercise of the trustee's discretion, has determined or determines in the future to pay to the beneficiary.

"(b) An order under this section may not require that the trustee pay in satisfaction of the judgment an amount exceeding 25 percent of the payment that otherwise would be made to, or for the benefit of, the beneficiary."

[20] Section 15300 provides: "Except as provided in Sections 15304 to 15307, inclusive, if the trust instrument provides that a beneficiary's interest in income is not subject to voluntary or involuntary transfer, the beneficiary's interest in income under the trust may not be transferred and is not subject to enforcement of a money judgment until paid to the beneficiary."

the statutory procedures applicable to ordinary judgment creditors." (*Ibid.*) Because the sanctions award was made in the context of a probate proceeding and involved administration of the trust, the trial court, in an exercise of its equitable supervision over the trust, could order the sanctions payable from the beneficiaries' share. The same reasoning applies here.

Furthermore, nothing would be gained by requiring the trustee to comply with the statutes upon which appellant relies. The surcharge arose out of appellant's misconduct as a trustee, misconduct that caused financial harm to the Trust. Whether appellant's actions warranted a surcharge and, if so, the amount of the surcharge, were issues to be decided by the probate court in an exercise of its equitable jurisdiction. (Rest.2d Trusts, §§ 197, 198 [the remedies of a trust beneficiary against a trustee are equitable in character and enforceable against the trustee in a court exercising equity powers].) The probate court, with all of the parties before it, found that appellant had breached her fiduciary duties and made its surcharge order. The probate court should be able to enforce the surcharge order in the context of administering the trust without requiring the parties to go to the time and expense of complying with statutes that essentially address the ability of a *third party creditor* to reach a beneficiary's assets. Consequently, we reject appellant's argument that our holding in any way undermines the procedures enacted by the Legislature to protect a beneficiary's interest in a spendthrift trust. (Code Civ. Proc., § 709.010, subd. (b); Prob. Code, § 15306.5.) Simply stated, those provisions are not applicable to this situation.[21] (See *Estate of Ivey, supra,* 22 Cal.App.4th at p. 885.)

---

[21] In light of this conclusion, we reject respondent's argument that the spendthrift provision does not apply because the trial court had ordered a final distribution of Trust assets, including appellant's distributive share of the principal.

Respondent relies upon section 15301, subdivision (b) which provides: "After an amount of principal has become due and payable to the beneficiary under the trust instrument, upon petition to the court under Section 709.010 of the Code of Civil Procedure by a judgment creditor, the court may make an order directing the trustee to satisfy the money judgment out of that principal amount. The court in its discretion may issue an order directing the trustee to satisfy all or part of the judgment out of that principal amount." The Law Revision Commission comment to the statute's 1990 enactment explains: "Subdivision (b) permits a creditor to reach principal that is due or payable to the beneficiary, notwithstanding a spendthrift provision in the trust. Under prior California law, there was no decision determining whether a judgment creditor could reach principal held by the trustee that was due or payable where the beneficiary's interest was subject to a restraint on transfer." (Cal. Law Revision Com. com., 54 West's Ann. Prob. Code (1991 ed.) foll. § 15301, p. 549.)

Appellant's reliance on the above statutory provision is misplaced. While it is true that appellant's interest is now payable to her, the statute's express language requires compliance with Code of Civil Procedure section 709.010, a condition respondent has not met. Further, we question whether a trustee who relies upon a probate court's surcharge order to impound a beneficiary's distributive share is a judgment creditor within the meaning of section 709.010 of the Code of Civil Procedure.

## DISPOSITION

The order appealed from is affirmed. Respondent is to recover its costs on appeal.

Epstein, P. J., and Suzukawa, J., concurred.

A petition for a rehearing was denied December 17, 2009, and appellant's petition for review by the Supreme Court was denied February 10, 2010, S179270.