Filed 4/30/13  Budget Finance Co. v. U.S. Bank CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| BUDGET FINANCE COMPANY, | B238907 |
| Plaintiff and Appellant, | (Los Angeles County |
| v. | Super. Ct. No. BP066539) |
| U.S. BANK, N.A., | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Marvin M. Lager, Judge.  Affirmed.

Wolf, Rifkin, Shapiro, Schulman & Rabkin and Simon Aron for Plaintiff and Appellant.

Glaser Weil Fink Jacobs Howard Avchen & Shapiro, and Barry E. Fink, Miriam J. Golbert and Alexander M. Kargher for Defendant and Appellant.

_____

Budget Finance Company appeals from the probate court's order denying its petition to instruct U.S. Bank, N.A., trustee of the Janice L. Taubman 1990 Trust, to pay the balance of a loan Budget made to Richard Taubman, a trust beneficiary. Budget contends the probate court erred in concluding Richard's[1] assignment to Budget of his interest in trust property to secure the loan violated a spendthrift clause in the trust and therefore could not be used to reach trust assets. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Janice L. Taubman 1990 Trust*

In 1990 Janice established a revocable intervivos trust naming herself as sole trustee and her children, Anne and Richard, as beneficiaries. When she died in September 1999, the trust became irrevocable. Under the trust's terms Janice's various ownership interests in Seaport Village, a shopping center and tourist attraction in San Diego, were placed in a subtrust (the Seaport Village subtrust) for Anne; Richard and his son, Wyatt, were named as contingent beneficiaries of the Seaport Village subtrust, entitled to benefit from those assets only if Anne did not survive Janice by 10 years. The subtrust's assets were to be distributed 10 years from Janice's death.

Janice's interests in business ventures other than Seaport Village, primarily interests in oil and gas leases, were placed in a subtrust for Richard. Under the terms of that subtrust net income was to be distributed to Richard in monthly or other convenient installments along with any additional funds the trustee deemed necessary in its discretion for the health and education of Richard and his son. The trust also required the trustee to pay out of the principal of Richard's share, in monthly or other convenient installments, any sums he requested not exceeding an aggregate annual sum of $100,000. Under the trust's distribution schedule any remaining balance of the subtrust was to be distributed to Richard 10 years from Janice's death.

---

1    Because Janice and her children, Richard and Anne, share the same surname, we refer to each of them by first name for clarity and convenience. (See *Jones v. Conoco Phillips Co.* (2011) 198 Cal.App.4th 1187, 1191, fn. 1; *Cruz v. Superior Court* (2004) 120 Cal.App.4th 175, 188, fn. 13.)

Janice declared in the trust instrument her intent to divide the trust assets equally between Anne and Richard. To effectuate this intent, the trust expressly provided for an equalizing payment, if necessary, at the time of final distribution of trust assets.

2. *The Trust's Spendthrift Provision*

The trust contained a spendthrift provision: "No beneficiary of any Trust created hereunder shall have any right, power, or authority to sell, assign, pledge, encumber, mortgage, or in any other manner, hypothecate, alienate, or impair all or any part of such beneficiary's interest in the principal or income [of the trust.] The beneficial and legal interest in the Trust, as well as both the principal and income of the Trust Property, shall be free from the interference or control of any creditor of any beneficiary of the Trust Property thereof, and shall not be subject to the claims of any such creditor, nor liable for attachment, execution, bankruptcy, or other process of law."

3. *Richard's Ex Parte Request Seeking Authorization To Encumber Trust Assets*

After Janice's death in 1999 the trust became the subject of contentious legal battles in the trial and appellate courts.[2] In 2003, while litigation was pending challenging U.S. Bank's actions as trustee and Anne's actions as a special trustee of her subtrust, U.S. Bank temporarily halted the monthly distributions to Richard anticipated under the terms of the trust.

On May 6, 2003 Richard filed an ex parte application for an order authorizing him to obtain a $275,000 loan from Budget to permit him to pay his and Wyatt's immediate living expenses until the litigation resolved and monthly distributions to him resumed. Richard requested a court order allowing him to encumber his beneficial interest in the subtrust and instructing U.S. Bank to repay the loan from funds in his subtrust. Richard

---

[2] A more comprehensive factual recitation concerning the establishment of the trust and prior actions involving the trust can be found in *Estate of Taubman* (Sept. 15, 2004, B170510) [nonpub. opn.] (*Taubman I*) (appeal from order removing Anne as special trustee); *Taubman v. U.S. Bank* (Oct. 24, 2007, mod. Nov. 26, 2007, B177712, B185170) [nonpub. opn.] (*Taubman II*) (appeal from judgment surcharging Anne for damages to Trust) and *Taubman v. Taubman* (June 18, 2008, B194074) [nonpub. opn.] (appeal from order denying Richard's petition to enforce a no contest clause).

3

represented in his ex parte application that U.S. Bank and Wyatt, through his guardian ad litem, had consented to the encumbrance of Richard's subtrust assets.  To support that representation, concurrently with his ex parte application Richard filed a document entitled "Consent by U.S. Bank, N.A. to *Ex Parte* Application by Richard Taubman," signed by David H. Hilgenberg, Senior Vice President of U.S. Bank.  In the document Hilgenberg stated U.S. Bank, as trustee, "consents to the *ex parte* application by Richard J. Taubman requesting authorization to obtain a loan encumbering the sub-trust established for [his] benefit and authorizing and directing U.S. Bank as Trustee to repay the loan from the assets in [Richard]'s Trust."  Richard filed a similar document on behalf of Wyatt, which was signed by Wyatt's guardian ad litem.

4. *The Probate Court's Order Granting Richard's Ex Parte Application*

On May 6, 2003 the probate court granted the ex parte application and authorized Richard to obtain the loan on the terms identified in his ex parte application.[3]  The order states, "U.S. Bank as Trustee is authorized to encumber the sub-trust established for the benefit of Richard J. Taubman and is authorized and directed to repay the loan from Ricky's Trust according to its terms."

Following the court's order, Richard signed a promissory note and an "irrevocable assignment" to Budget of his interest in his subtrust up to the amount needed to repay "the entire debt," including any costs and attorney fees incurred to enforce the assignment.  The note stated it was secured by the "Collateral Pledge of Richard J. Taubman's entire beneficial Interest" in the trust.  The assignment documentation made clear the assignment was intended "to secure [the] loan."  The assignment also purported to authorize and direct the trustee of the trust to "pay and or transfer to" Budget any money due and owing pursuant to the promissory note.  U.S. Bank did not sign any

---

3    In his ex parte application Richard stated the loan would be for $275,000 on terms not to exceed six points and 10.55 percent annual interest, with monthly payments of $2,525, amortized over 30 years, with the full amount of the loan due and payable on or before September 1, 2009.  The note was structured to allow low monthly payments, with a balloon payment due on September 1, 2009.

4

document pertaining to the loan or the assignment nor did it execute any security instrument.

On May 20, 2003 Budget filed and served on U.S. Bank and its attorneys a document entitled Notice of Irrevocable Assignment of Beneficial Interest of Trust, attaching copies of the promissory note, the assignment and U.S. Bank's "Consent to the Ex Parte Application."

5. *U.S. Bank's Payments from June 25, 2003 Through January 25, 2011*

U.S. Bank made monthly payments of $2,525 to Budget consistent with the terms identified in the ex parte application, the court's May 6, 2003 order and the promissory note. The balance of the note came due on September 1, 2009. However, Budget did not request payment of the balance nor did Richard or U.S. Bank pay the balance. Instead, U.S. Bank continued to make the same $2,525 monthly payment to Budget on Richard's behalf.

On January 28, 2011, in a separate proceeding to resolve outstanding claims between Richard and Anne relating to the trust, the probate court concluded Richard had been overpaid during the term of the trust, through no fault of the trustee, and directed Richard to reimburse the trust for the amount he was overpaid, plus interest. The court ordered U.S. Bank to terminate the two subtrusts for Richard and Anne and to make an in-kind distribution of trust assets (except for the Seaport Village assets) to Anne. The court ordered the Seaport Village assets to be divided in-kind evenly between Anne and Richard, subject to the amounts Richard owed Anne, which would, until paid, constitute an equitable lien in favor of Anne on Richard's pro-rata interest in the Seaport Village trust assets. The court declined Anne's request to terminate the trust and discharge the trustee, explaining such a ruling would have to await an amended final accounting to take into account the value of the equitable lien, Richard's oil and gas interests and a projected tax refund.

6. *Budget's Petition To Instruct U.S. Bank To Pay The Loan and/or Surcharge U.S. Bank*

Following the court's January 28, 2011 order, U.S. Bank ceased making monthly payments to Budget.[4] On September 1, 2011 Budget petitioned the court to instruct U.S. Bank to pay it in accordance with the loan terms and/or to hold U.S. Bank liable for the loan balance to the extent remaining trust assets were insufficient to satisfy the loan obligation.[5] Budget argued it was a valid assignee of Richard and thus had the same beneficial interest in his trust assets as he did up to the amount necessary to repay the loan. In any event, it argued, by consenting to the encumbrance and operating for nearly eight years in accordance with the payment schedule provided in the promissory note, U.S. Bank was prohibited, under the doctrines of judicial and equitable estoppel, from challenging the validity of the assignment.

Both U.S. Bank and Anne filed oppositions to the petition. U.S. Bank argued the trust's spendthrift clause prohibited Richard from assigning his interest in trust assets. It further asserted its payments to Budget over the years were at Richard's request and made out of cash distributions that would otherwise have been paid directly to him; those payments were not made out of any obligation arising under the loan. Anne argued the court's May 6, 2003 order was void because she had not been given notice of the request to encumber trust assets, an action that she insists detrimentally affected her interest in the trust.[6]

7. *The Probate Court's Denial of Budget's Petition*

The probate court denied Budget's petition, concluding the trust's spendthrift provision precluded Richard from assigning his interest in trust assets. The court agreed with U.S. Bank that the May 6, 2003 order did not amount to court approval of the

---

[4]     As of January 28, 2011 payments made under the note totaled $224,798.

[5]     On September 1, 2011 Budget also filed an objection to the second and final accounting of U.S. Bank and moved to enjoin U.S. Bank from withdrawing as trustee until it satisfied the loan obligation from the trust assets.

[6]     Neither Anne nor Richard is a party to this appeal.

assignment. Rather, the order authorized U.S. Bank to encumber the trust on Richard's behalf, an authority *it* never exercised because it never executed any document relating to the loan. Budget's request for a statement of decision, made after the matter was submitted, was denied as untimely.

**DISCUSSION**

1. *Standard of Review*

The probate court's legal determinations, including the legal effect of its orders, are reviewed de novo when they do not depend on resolution of any disputed facts. (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 800; *Professional Engineers in California Government v. Kempton* (2007) 40 Cal.4th 1016, 1032; *Estate of Wilson* (2012) 211 Cal.App.4th 1284, 1290.) The court's resolutions of factual disputes are reviewed for substantial evidence. (*Professional Engineers,* at p. 1032; *In re David H.* (2008) 165 Cal.App.4th 1626, 1633; *Winet v. Price* (1992) 4 Cal.App.4th 1159, 1166.)

2. *The Probate Court Did Not Err in Ruling the Spendthrift Clause Prohibited Richard's Assignment of His Interests in Trust Assets*

As a general matter, a spendthrift provision in a trust prohibits the trust beneficiary from assigning or otherwise encumbering his or her interests in trust assets while the property remains in the trust. (See *Chatard v. Oveross* (2009) 179 Cal.App.4th 1098, 1104 ["[a] *spendthrift trust* is created where the settlor gives property in trust for another, and provides that the beneficiary cannot assign or otherwise alienate his or her interest, and that it shall not be subject to the claims of the beneficiary's creditors"]; 13 Witkin, Summary of Cal. Law (10th ed. 2005) Trusts, § 151, p. 715 [same]; see also Prob. Code, § 15300 [authorizing creation of spendthrift trust]; *Chatard* at p. 1106 ["a spendthrift provision protects the income and principal interests of the beneficiaries from third party claims as long as the income or principal is properly held by the Trust"].)

Budget contends the probate court erred in concluding the spendthrift provision was dispositive and Richard's assignment to Budget of his interest in trust assets could not be used to reach trust assets. Budget argues Richard did not unilaterally encumber his

7

interest in trust property, an action it concedes would have been prohibited by the spendthrift clause.  Rather, Richard made the assignment with court approval.

Budget mischaracterizes the probate court's May 6, 2003 order.  Although the court could have modified the spendthrift clause to permit Richard to assign his interest in trust assets to secure the loan upon his default (see Prob. Code, § 15409, subd. (b) [authorizing court to modify trust when necessary to preserve intent of settlor; "court shall consider a trust provision restraining transfer of the beneficiary's interest as a factor in making its decision whether to modify or terminate the trust, but the court is not precluded from exercising its discretion to modify or terminate the trust solely because of a restraint on transfer"]), Richard did not request a modification in his ex parte application; and the court did not order one.[7]  Rather, the court authorized U.S. Bank to encumber trust assets and repay the loan on Richard's behalf with assets from Richard's trust.  Budget, however, failed to properly implement that authorization.  Instead, it attempted a hybrid approach, purporting to make the trust both the obligor and the guarantor of the loan at the same time.  It accomplished neither objective.

Despite the court's order, U.S. Bank did not obtain the loan on Richard's behalf.  Budget made the loan directly to Richard.  U.S. Bank did not encumber trust assets or sign any security instrument.  Budget had only Richard sign the documentation.  Although Richard purported to assign to Budget his interests in trust assets to secure the loan, that assignment, in that form, was prohibited by the spendthrift clause (see generally *Kelly v. Kelly* (1938) 11 Cal.2d 356, 362-363; *Chatard v. Oveross, supra,* 179 Cal.App.4th at p. 1106), which, as we explained, was not modified by the court's May 6, 2003 order.  The net effect of the instruments Richard signed, therefore, was that Richard became the obligor on an unsecured note.

---

[7]      In fact, Richard's ex parte application did not mention the word "modification"; and Probate Code section 15409, the statutory authority for modifying a spendthrift trust, was not cited in Richard's ex parte application or in Budget's petition or appellate briefs.

### 3. *Budget Has Not Demonstrated Grounds for Estoppel*

Budget contends, even if U.S. Bank did not encumber trust property, its "consent" to Richard's ex parte application and its monthly payments to Budget for nearly eight years evidenced its intent to be bound by the terms of the loan and to use trust assets to repay the loan. At the very least, it argues, U.S. Bank is prohibited, under the doctrines of judicial and equitable estoppel, from claiming it has no obligation to use trust assets to repay the loan. Neither argument is persuasive.

#### a. *Budget's arguments relating to judicial estoppel are without merit*

Budget's judicial estoppel argument, based entirely on the legal effect of its "consent by U.S. Bank to Richard's ex parte petition" filed concurrently with Richard's ex parte application, reflects a fundamental misunderstanding of the doctrine. Judicial estoppel precludes a party from gaining an advantage by successfully taking one position in a judicial proceeding and then taking a contrary position in a subsequent proceeding when the first position was not the result of ignorance, fraud or mistake. (See *People v. Castillo* (2010) 49 Cal.4th 145, 155 [doctrine of judicial estoppel applies when "'"(1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud or mistake"'"]; *Aguilar v. Lerner* (2004) 32 Cal.4th 974, 986-987 [same]; see also *Tiffin Motorhomes, Inc. v. Superior Court* (2011) 202 Cal.App.4th 24, 32 ["the principle of judicial estoppel does not apply to a party who merely *advocates* inconsistent positions, but only to one who *successfully* asserts one position and later attempts to benefit from asserting an inconsistent position"].)

U.S. Bank's nonopposition to Richard's ex parte application was not a consent to Richard's assignment of his interests in trust assets to secure the loan; indeed, such an assignment is not mentioned anywhere in the ex parte request, much less the court's May 6, 2003 order. Moreover, Budget did not appear or take any position in the first

9

(ex parte) proceeding other than consenting to the application. Accordingly, it cannot be said to have taken a contrary position in opposing Budget's current petition.

b. *The probate court's rejection of equitable estoppel is supported by the applicable law and substantial evidence*

Budget next urges that, having made monthly payments on the loan for nearly eight years, U.S. Bank is prevented under the doctrine of equitable estoppel from asserting it had no duty to pay the balance of the loan, either as the obligor under the note or the guarantor upon Richard's default. The party seeking to establish equitable estoppel must show: (1) The party to be estopped was apprised of the facts and intended his or her conduct to be acted upon or so acted in a way that the party asserting the estoppel had a right to believe it was so intended; (2) the other party was ignorant of the true state of facts; and (3) he or she relied on the conduct to his or her injury. (*Strong v. County of Santa Cruz* (1975) 15 Cal.3d 720, 725; *Parmar v. Board of Equalization* (2011) 196 Cal.App.4th 705, 717.)

Budget asserts the evidence is undisputed that all parties intended to be bound by the note whether or not U.S. Bank actually signed any documents to that effect and emphasizes U.S. Bank's monthly payments in accordance with the note and the terms identified in Richard's ex parte application and the court's May 6, 2003 order. However, U.S. Bank's actions are fully consistent with its position it made the monthly payments to Budget pursuant to Richard's request that a portion of his monthly distribution be directed to Budget to pay the loan. In fact, that is precisely what a trustee of a spendthrift trust is required to do when notified of a beneficiary's transfer of interest in trust assets: "Persons who have received a purported assignment of a beneficiary's interest in a spendthrift trust do not thereby acquire that beneficial interest. This does not mean, however, that the purported transfer has no effect. The beneficiary's act has the effect of an authorization to the trustee to distribute to the purported transferee whatever distributions the beneficiary is entitled to receive and has purported to assign, but the authorization is revocable at any time. Thus, a spendthrift restraint merely prevents the beneficiary from making an *irrevocable* transfer of his or her beneficial interest. [¶] A

10

trustee who pays funds to a purported assignee . . . must cease doing so upon instruction from the beneficiary." (Rest.3d Trusts, § 58, com. (d)(1), pp. 359-360; see generally *Chatard v. Oveross, supra,* 179 Cal.App.4th at p. 1105, fn. 12 ["California trust law is largely derived from the Restatement rules"]; 13 Witkin, Summary of Cal. Law (10th ed. 2005) Trusts, §§ 12, 17, pp. 579-580, 583-585 [same].)

The probate court implicitly found in favor of U.S. Bank's characterization of the parties' intent, a finding supported by substantial evidence. The schedule of distributions attached to the trustee's second and final accounting from 2003 through 2010 shows a portion of monthly cash disbursements to Richard was paid directly to Budget "per [Richard's] request." Consistent with that intent, U.S. Bank ceased making payments to Budget once cash distributions to Richard ceased. Budget, of course, offers a contrary interpretation for U.S. Bank's post-loan behavior, but the probate court rejected it, a finding amply supported by the record. Simply stated, it cannot be said as a matter of law that U.S. Bank's payment of funds to Budget is, by itself, sufficient grounds for an estoppel.

4. *The Probate Court Properly Denied Budget's Request To Instruct or Surcharge U.S. Bank*

Citing Probate Code section 15303, subdivision (b), Budget contends U.S. Bank is liable for the balance of the loan to the extent trust assets are insufficient to satisfy the debt. That section generally provides a trustee is liable to a transferee or creditor of the beneficiary when the trustee, knowing of the beneficiary's transfer of his or her interest in trust assets, nonetheless distributes the assets to the beneficiary without satisfying the transferee or creditor's interest. Conspicuously omitted from Budget's argument is any reference to the last sentence of Probate Code section 15303, subdivision (b), which makes clear that provision does not apply to a spendthrift trust: "This subdivision does not apply if the beneficiary's interest in the trust is subject to a restraint on transfer that is valid under [s]ection 15300 or 15301." In other words, if, as here, the trust is subject to a

11

spendthrift provision, the trustee is not liable for failing to ensure funds remain in the trust to satisfy an invalid transferee or creditor.[8]

Budget's related contention U.S. Bank is liable under Probate Code section 18001 is similarly without merit. That section provides, "A trustee is personally liable for obligations arising from ownership or control of trust property only if the trustee is personally at fault." (Prob. Code, § 18001.) Because U.S. Bank had no duty to Budget, either as an obligor or guarantor of the note, its disbursements of trust property consistent with the trust terms and interim court orders and directions was not improper. (See *Haskett v. Villas at Desert Falls* (2001) 90 Cal.App.4th 864, 877 [a trustee is "personally at fault" within the meaning of Probate Code section 18001 only when it "either intentionally or negligently acts or fails to act"; trustee not personally liable under Prob. Code, § 18001 solely by virtue of having ownership or control of trust property]; *Galdjie v. Darwish* (2003) 113 Cal.App.4th 1331, 1348 [same].)

Finally, Budget contends the trust, along with the spendthrift provision, expired on September 5, 2009. Thus, by the time of its petition seeking an order compelling the trust to pay the balance of the loan, the assets were properly distributable and no longer protected from Richard's assignee. "[P]roperty that has become distributable to the beneficiary but is retained by the trustee beyond a time reasonably necessary to make distribution to the beneficiary, and thus to which the beneficiary has a right to demand immediate distribution" may be subject to attachment by the beneficiary's creditors, notwithstanding the existence of a spendthrift clause in the trust. (Rest.3d Trusts, § 58, com. (d)(2), par. 3, p. 361.) However, in denying the petition, the probate court implicitly found that distribution to Richard has not been unreasonably delayed, and Budget does not challenge that finding. Accordingly, as the probate court ruled, while the assets reasonably remain in the trust's possession, they are protected from Budget's

---

8      In its reply brief Budget acknowledges the final sentence of Probate Code section 15303, subdivision (b), is fatal to a claim involving a spendthrift trust, but argues the spendthrift provision was inapplicable in light of U.S. Bank's consent to the assignment and the court's approval of it, arguments we have rejected.

claim.  (*Chatard v. Oveross, supra,* 179 Cal.App.4th at p. 1105-1106 [assets in spendthrift trusts are protected from claims of creditors and transferees while the assets reasonably remain in trust].)[9]

**DISPOSITION**

The order is affirmed.  U.S. Bank is to recover its costs on appeal.


PERLUSS, P. J.

We concur:


WOODS, J.


ZELON, J.

---

[9]     Citing *Canfield v. Security First-Nat. Bank* (1939) 13 Cal.2d 1, 29, Budget also requests this court hold that it has priority, by virtue of its assignment, over any other creditor.  *Canfield,* which discussed the priority of judgment creditors to a spendthrift trust where surplus income could be reached by creditors, is inapposite for a variety of reasons, including, most glaringly, that Budget is not a judgment creditor and the spendthrift provision in the instant trust is not limited to that income necessary for Richard's and his dependents' education and support.  Moreover, in light of our holding that the assignment did not convey any interest in trust assets, any such order would be improper.

13