# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2025 ND 77

Steven Holte and Sheldon Holte,
individually and as Co-Trustees of
the "Kermit and Ardella Family
Mineral Trust," Ardella Holte
individually and as Beneficiary of
the Kermit and Ardella Family
Mineral Trust, and the Kermit and
Ardella Family Mineral Trust,    Plaintiffs, Appellees, and Cross-Appellants

    v.

Tiah E. Rigby, as the Personal
Representative of the Estate of
Nathan Holte, and Tiah E.
Rigby, Individually,    Defendant, Appellant, and Cross-Appellee

    and

All other persons unknown
claiming any estate or interest in, or
lien or encumbrance upon, the
property described in the complaint,    Defendants

## No. 20240244

Appeal from the District Court of Williams County, Northwest Judicial District, the Honorable Charles B. Neff, Jr., Judge.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Opinion of the Court by Tufte, Justice.

Kevin J. Chapman, Williston, N.D., for plaintiffs, appellees, and cross-appellants.

H. Malcolm Pippin, Williston, N.D., for defendant, appellant, and cross-appellee.

**Tufte, Justice.**

[¶1]   Tiah E. Rigby appeals, and Steven, Sheldon, and Ardella Holte ("Holtes") cross-appeal from a district court judgment entered after a bench trial on claims ensuing from a former trustee-beneficiary's misappropriation of trust income. On appeal, Rigby argues the district court erred in ruling that the co-trustees may offset her distribution to recoup trust income misappropriated by the former trustee-beneficiary, Rigby's deceased father, despite finding that Rigby has no personal liability for her father's misdeeds. On cross-appeal, the Holtes argue the district court erred in ruling that the co-trustees may not further offset Rigby's distribution to recoup non-trust money that her father stole. We reverse in part and affirm in part.

I

[¶2]   This case centers on co-trustees' authority to recoup money from the current life beneficiary of a trust income share when the former life beneficiary of that share abused his role as trustee-beneficiary to misappropriate trust money.

[¶3]   In 2008, Kermit and Ardella Holte ("grantors") executed the Kermit and Ardella Holte Family Mineral Trust Agreement and conveyed mineral interests to the trust by quitclaim deed. The trust designates the grantors and their three sons—Sheldon Holte, Steven Holte, and Nathan Holte—as beneficiaries:

> E. <u>Income.</u> The net income of the Trust, and payments received by the trust, after payment of any expenses incurred in the administration of the Trust, shall be divided into the following parts and distributed in regular monthly payments as follows:
>
> > 1.  All bonus payments, delay rentals and shut in payments shall be distributed at least annually to Kermit Holte and Adella Holte, and to the survivor of them.
> >
> > 2.  All royalties and other income shall be distributed at least monthly as follows:

1

A. One-fourth (1/4) to Ardella Holte and Kermit Holte, and to the survivor of them.

B. One-fourth (1/4) each to Sheldon Holte, Steven Holte and Nathan Holte.

Upon the death of the survivor of Ardella Holte and Kermit Holte, and upon the death of any other beneficiary, his or her trust share shall go to his or her issue per stirpes as beneficiaries, or if none, such share shall be added ratably to the other beneficiaries of this trust.

The trust agreement designates Kermit and Nathan as the original co-trustees.

[¶4] Kermit died in May 2012, and, pursuant to ¶ E(2)(A) of the trust agreement, Kermit's interest went to Ardella. Ardella and Sheldon declined to serve as co-trustee after Kermit's death. Nathan served as sole trustee until 2018, when Steven was appointed co-trustee due to Nathan's failing health and the brothers' worry that Nathan could suddenly pass. Nathan continued to manage the financial aspects of the trust, however; Steven did not take an active role in administration of the trust until Nathan's death in April 2021. Upon Nathan's death in April 2021, Sheldon was appointed successor co-trustee.

[¶5] No one detected any issue with Nathan's administration of the trust until Steven reviewed the accounts after Nathan's death. Steven learned that, from 2014 until his death in 2021, Nathan had directed half of Ardella's one-fourth share to his ex-wife, Dawn, who, pursuant to their 2011 divorce judgment, was entitled to half of Nathan's share of trust income. In addition to Nathan's misappropriation of trust income, Steven also discovered that Nathan had stolen money from Ardella's non-trust bank accounts.

[¶6] All accounts at issue in this case were held with the same bank in Williston. Each beneficiary had their own account into which Nathan, as an agent and authorized signer on each account, deposited distributions. Nathan and Steven, as co-trustees, signed a Certification of Trust, Delegation of Power, and Indemnity Agreement, which allowed each of them to independently manage accounts associated with the trust without the other's prior authorization.

2

Ardella also held personal checking and savings accounts that were separate from her trust account.

[¶7] After the initial accounting uncovered Nathan's mishandling of the trust and non-trust accounts, Steven and Sheldon, as co-trustees, retained an accounting firm to investigate. The investigation revealed that Nathan had stolen $442,182.12 from Ardella's share of the trust income by directing half of Ardella's share to his ex-wife Dawn. Although Ardella had received only an eighth share of trust income, she had paid taxes as if she had received her full quarter share, because Nathan had directed the tax preparer to prepare equal K-1 tax forms for all beneficiaries. The investigators estimated that Ardella had paid between $35,000 to $76,500 in excess taxes. The investigation also revealed that Nathan had stolen $375,100 from Ardella's non-trust accounts. Nathan held a durable power of attorney for Ardella and used this authority to withdraw money out of Ardella's accounts.

[¶8] Nathan died in April 2021, and Tiah Rigby, Nathan's only child, was appointed personal representative of Nathan's estate. Pursuant to ¶ E of the trust agreement, Rigby became the life beneficiary of the quarter share in trust income upon Nathan's death. In October 2021, the Holtes filed this action against Rigby, individually and as representative of Nathan's estate, alleging that Nathan had committed conversion, civil theft, fraud, deceit, exploitation of a vulnerable adult, breach of contract, negligent misrepresentation, negligence, and constructive fraud. In their amended complaint, they added a claim for constructive trust and offset, alleging that Nathan's estate and Rigby were enriched through Nathan's fraudulent actions and that Rigby's share of trust income should be offset until all money that Nathan stole, plus interest, is recouped. In her answer, Rigby denied any knowledge of or responsibility for Nathan's actions and alleged that the co-trustees were wrongfully withholding her distribution. Rigby also filed a counterclaim against the co-trustees, alleging that she was entitled to her full quarter share of trust income and that the co-trustees had violated both their fiduciary duties as well as the trust agreement by withholding it.

[¶9] Following a bench trial, the district court concluded that the co-trustees may offset Rigby's distribution until all misappropriated trust money, plus

interest, is recouped, but that the co-trustees may not offset Rigby's distribution to recoup the non-trust money that Nathan stole. The district court summarized the issue before it:

> It is undisputed that Nathan is liable for any misappropriated money from the Trust or Ardella. It is also undisputed through testimony at trial that Rigby was not involved, and has no personal liability for the actions of Nathan during his lifetime. As Nathan is deceased, the question becomes who is liable for the wrong-doing by Nathan discovered post-death, his estate or Rigby as a successor beneficiary? As the question only involves the Trust, any monies misappropriated by Nathan from Ardella's personal banking accounts while he was general durable power of attorney must be reclaimed from Nathan's estate.

[¶10] The district court affirmed its previous ruling on the issue of whether co-trustees have the authority to offset Rigby's distribution. Prior to trial, the district court had ruled on parties' cross-motions for summary judgment, concluding that under both the trust agreement and North Dakota law, the co-trustees may offset Rigby's distribution to recoup the misappropriated trust income:

> Parties differ on whether Trustees under the Trust have the power to off-set any amounts improperly diverted to equalize beneficiary payments. Further, that under those powers, Trustees can recoup any money improperly taken by offsetting Nathan's shares and future shares until the Trust and beneficiaries are whole. The powers of the Trustee are found on page 2, paragraph D of the Mineral Trust. Such powers include general powers "to compromise, settle, and adjust all claims and problems of any kind and to perform all other acts which they deem necessary or advisable for the complete administration of the Trust." *Id.* at ¶D(4). Generally, a trustee is liable to the trust for any breach of fiduciary duty by the trustee. *In re Curtiss A. Hogen Trust B*, 2018 ND 117, ¶ 29, 911 N.W.2d 305. The court has several options when a breach of trust has occurred, including paying of money, restoration of property, create a constructive trust, or reduce compensation to the trustee. N.D.C.C. § 59-18-01(2). A trustee, when a breach of trust is committed, is liable to the beneficiaries affected, and such damages are calculated under statute. N.D.C.C. § 59-18-02(1).
> Here, both the Trust and the applicable statutes provide far ranging powers to the Trustee. It is undisputed that Nathan was a

4

Trustee for the Trust prior to his death, and at the time of the transfers at issue. He owed a fiduciary duty to the Trust and beneficiaries. Further, it is undisputed that there are currently Co-Trustees of the Trust, who have all the powers allowed under the Trust and applicable statutes. In reading the statutes and the Trust, the court believes that Trustees/Co-Trustees have the power to off-set any improper takings by Nathan, and the ability to off-set those amounts against Nathan's share to his beneficiary. To hold otherwise would be contrary to the plain language of the Trust and its intent. But, the current Co-Trustees can only exercise such powers if a jury finds that certain transactions were improper and the amount of such transactions.

Following trial, the district court affirmed its prior order:

The court's order was that Rigby is a beneficiary under the Trust due to being Nathan's legal issue, Rigby is not personally liable, and there can be an off-set against Rigby's share as a beneficiary. As her interest flows from her father Nathan, who is named in the Trust document, her Trust beneficiary interest would be subject to the off-set of his misappropriation, as the court previously ordered.

II

[¶11] Rigby argues the district court erred in concluding the co-trustees may withhold her distribution to recoup the trust income that Nathan misappropriated. Specifically, Rigby argues that Nathan had only a life interest in the quarter share at issue and her beneficial interest in that share vested at the moment Nathan died, and it is thus improper for co-trustees to withhold Rigby's quarter share of the trust income that has accrued since her beneficial interest vested when the district court found she has no personal liability for Nathan's misappropriation of trust income. The Holtes argue the district court correctly concluded that "the Co-Trustees have broad and expansive power and are authorized to charge/offset the moneys Nathan stole from Ardella's trust share against Nathan's share.

[¶12] The issue before the Court is whether, under the trust agreement and North Dakota law, co-trustees have authority to recoup from Rigby's distribution the trust income that Nathan misappropriated. Our primary objective in construing the trust agreement is to ascertain the grantors' intent. *In*

5

*re G.I.C.*, 2025 ND 36, ¶ 13, 17 N.W.3d 569. If the trust instrument is unambiguous, we ascertain the grantors' intent from the language of the trust document itself. *Id.* Neither party argues the trust instrument is ambiguous.

[¶13] We apply our general rules of construction for written documents when construing trust agreements:

> General rules for interpreting written documents apply to the interpretation of trust instruments. Chapter 9-07, N.D.C.C., governs contract interpretation. Under N.D.C.C. § 9-07-02, a contract's language governs its interpretation "if the language is clear and explicit and does not involve an absurdity." "The whole of a contract is to be taken together so as to give effect to every part if reasonably practicable. Each clause is to help interpret the others." N.D.C.C. § 9-07-06. Interpretation of a document is a question of law when the intent can be ascertained from the document alone.

*In re Curtiss A. Hogen Tr. B.*, 2018 ND 117, ¶ 18, 911 N.W.2d 305 (citations omitted).

[¶14] Although the trust agreement provides co-trustees with broad authority and discretion to administer the trust, withholding Rigby's distribution is inconsistent with grantors' clear intent that Rigby, as life beneficiary of a quarter share of trust income, receive a monthly distribution. The trust agreement provides:

> D. <u>Trustees' Powers</u>. The Trustees and their successors from time to time (whether named in this agreement or otherwise), and those to whom the duties, powers, rights, privileges or discretions of the trustee may be delegated (unless the instrument of delegation itself otherwise requires), in extension and not in limitation of the powers provided by applicable law, shall have the following powers, rights, privileges and discretions (or, where so provided, duties) excisable without approval, order or license of any court, except that the trustees shall not have the power to sell or otherwise dispose of the assets of the trust:
> 1. <u>Income at Termination.</u> To pay any net income unpaid or accrued at the death of any trust beneficiary to the next succeeding beneficiary and not to his estate.

2. <u>Income Payments.</u> To make all payments of trust income required hereunder in such installments as they deem advisable, but not less frequently than monthly.
3. <u>Oil and Gas Leases.</u> To lease oil, gas and other mineral interests for any term, including a term of years which may continue beyond the term of the Trust created herein.
4. <u>General Powers.</u> To compromise, settle and adjust all claims and problems of any kind and to perform all other acts which they deem necessary or advisable for the complete administration of the Trust.

The Holtes argue that the offset at issue is within co-trustees' broad general powers under ¶ D(4).

[¶15] The Holtes cite no authority for their contention that a trustee may withhold a current life beneficiary's distribution of trust income to recoup money misappropriated by the former life beneficiary. The Holtes' construction of the trust agreement fails to address co-trustees' duties under the trust agreement and the grantors' clear intent to create successive life interests in the shares of trust income. Paragraph E of the trust agreement provides:

E. <u>Income.</u> The net income of the Trust, and payments received by the trust, after payment of any expenses incurred in the administration of the Trust, *shall* be divided into the following parts and distributed in regular monthly payments as follows:
1. All bonus payments, delay rentals and shut in payments shall be distributed at least annually to Kermit Holte and Adella Holte, and to the survivor of them.
2. All royalties and other income *shall* be distributed at least monthly as follows:
   A. One-fourth (1/4) to Ardella Holte and Kermit Holte, and to the survivor of them.
   B. One-fourth (1/4) each to Sheldon Holte, Steven Holte and Nathan Holte.

Upon the death of the survivor of Ardella Holte and Kermit Holte, and upon the death of any other beneficiary, his or her trust share *shall* go to his or her issue per stirpes as beneficiaries, or if none, such share shall be added ratably to the other beneficiaries of this trust.

7

The co-trustees have a duty under the trust agreement to distribute, at least monthly, trust income to the life beneficiaries.

[¶16] Paragraph E of the trust agreement expressly creates successive life interests in quarter shares of the trust's income. "A disposition such as 'to A for life, then to B for life' creates successive life estates, in which the right to possession automatically shifts to B upon A's death." Restatement (Third) of Property (Wills & Don. Trans.) § 24.5 cmt. g (2011). "The interest of a trust beneficiary who has the right to the income from a trust for his or her lifetime is sometimes called an 'equitable life estate.'" *Id.* cmt. b. Pursuant to ¶ E, Nathan's life interest in a quarter share of trust income terminated upon his death, at which point Rigby's life interest in that share vested.

[¶17] The Holtes rely on inapposite authority to support their argument that the district court properly concluded the co-trustees may offset Nathan's misappropriation of trust money against Rigby's distribution. Regarding a trustee's discretion in distribution of trust income, the Holtes' reliance on *Hurtig v. Gabrielson*, 525 N.W.2d 612 (Minn. Ct. App. 1995) is misplaced. In *Hurtig*, the court held that under the terms of the trust, the trustee had "absolute discretion over distributions to the contingent beneficiaries," which was not limited by a contingent beneficiary's discharge in bankruptcy of her debt to the trust. *Id.* at 612. The trust instrument in *Hurtig* provided trustees with far broader discretion in distribution of trust income than the trust agreement at issue here:

> [T]he net income of the Trust shall be paid to the donor's spouse provided that, if the Trustee determines that the donor's spouse has adequate other income, the Trustee may withhold all or any part of the net income and may distribute all or any part thereof to and among the donor's children in any proportion deemed advisable by the Trustee. Any net income not so distributed shall be accumulated and added to the principal for reinvestment.

*Id.* at 612–13. In this case, ¶ E of the trust agreement provides express direction that co-trustees "shall" distribute trust income to the life beneficiaries on a monthly basis.

[¶18] The Holtes cite to *Blakemore v. Jones*, 22 N.E.2d 112, 113 (Mass. 1939), for the general principle that: "If a trustee who is also one of the beneficiaries

8

commits a breach of trust, the other beneficiaries are entitled to a charge upon his beneficial interest to secure their claims against him for the breach of trust." Although the court in *Blakemore* acknowledged this principle, it declined to apply it, explaining "[t]he quoted statement of principle, we think, has application only where the interest of the trustee as beneficiary is in its nature liable to be reached by creditors." *Id.* The issue before the court in *Blakemore* was whether the trustee could withhold a beneficiary's distribution to compensate the trust for liabilities incurred while the beneficiary had served as co-trustee. The beneficiary, "[t]hrough want of good judgment on the part of her co-trustee, now deceased, and without any moral fault on her part, . . . was charged with liability to the principal of the trust[.]" The court held that under these facts, the trust's spendthrift provision precluded creditors—including the trust itself—from reaching the beneficiary's interest in trust income. *Id.*

[¶19] The other authorities the Holtes cite pertain to offsetting a trustee-beneficiary's misappropriation of trust property against that same trustee-beneficiary's beneficial interest. *See Hogen Tr. B*, 2018 ND 117 (pertaining to offsets against living trustee's share of trust where trustee had breached his fiduciary duties); *see In re Testamentary Tr. Created Under the Will of King*, 434 P.3d 502 (Or. Ct. App. 2018) (pertaining to offsets against living trustee-beneficiary's interest in trust to compensate the trust for losses caused by that trustee-beneficiary's breaches of trust); *see Montoya v. Ahern*, 426 P.3d 599 (Nev. 2018) (same). These cases are consistent with the principle that "[i]f a trustee who is also one of the beneficiaries commits a breach of trust, the other beneficiaries are entitled to a charge upon his beneficial interest to secure their claims against him for the breach of trust." Restatement (First) of Trusts § 257 (1935). In this case, however, the breaching trustee's beneficial life interest terminated upon his death, and the co-trustees are offsetting to recoup his misappropriations against the current life beneficiary's distribution.

[¶20] The Holtes argue that Nathan's misappropriations created a liability that attached to his beneficial interest, and because Rigby is the current life beneficiary of that interest, her distribution is subject to offset. They cite no authority that directly supports this contention. There is limited on-point authority on this issue, but what exists suggests that "[w]here a life beneficiary is indebted to the trust or the settlor and dies, remainder interests under the trust

9

cannot be taken to satisfy his obligation." Bogert's The Law of Trusts and Trustees § 191 n.20 (citing *In re Purdy's Will*, 16 Misc. 2d 530, 530–31, 181 N.Y.S.2d 635, 636 (Sur. 1958)). In resolving a dispute among life beneficiaries of trust income, the Supreme Court of Pennsylvania rejected a similar attempt to offset a deceased trustee-beneficiary's debt to trust against the life interest that went to his widow and children upon his death:

> The appellants' [(current life beneficiaries')] theory rests upon an obviously false premise. Of course, so far as the trustee-beneficiary, O'Hara D. Brereton [(previous life beneficiary)], was concerned, "The other beneficiaries . . . [could] insist that his interest be impounded to make good the loss; they are entitled to a charge upon his interest to indemnify them for the loss": 2 Scott on Trusts, § 257, p. 1455; Restatement, Trusts, § 257. So much may be freely conceded. But, it is clear beyond quibble that the interest of O'Hara D. Brereton in the trust was a life interest in income which interest was extinguished by his death so that, upon his death, the right to a share of the income from the trust was no longer his and, therefore, not available for the payment of his debts.

*In re Brereton's Estate*, 130 A.2d 453, 457 (Pa. 1957).

[¶21] Similarly, here, Nathan's beneficial life interest terminated upon his death, and because Rigby is not personally liable for Nathan's misappropriations, it is improper to offset against her distribution. *See* Restatement (First) of Trusts § 104 (1935) ("A beneficiary is generally not personally liable to the trust except to the extent: (a) of a loan or advance to the beneficiary from the trust; (b) of the beneficiary's debt to the settlor that has been placed in the trust . . . ; (c) the trust suffered a loss resulting from a breach of trust in which the beneficiary participated; or (d) provided by other law, such as the law of contract, tort, or unjust enrichment."). We reverse and remand for further proceedings consistent with this opinion.

III

[¶22] The Holtes cross-appeal, arguing the district court erred in concluding the co-trustees lack authority to further withhold Rigby's distribution to recoup the non-trust money Nathan stole from Ardella. They argue that under N.D.C.C. § 59-18-01(2), "[t]he Court is allowed to 'order any other appropriate

10

relief,'" and it is thus "only appropriate that Ardella gets paid all of the moneys stolen by Nathan by charging that share of the Mineral Trust under the theory of equitable lien."

[¶23] The Holtes' equitable lien theory fails, because an "equitable lien attaches to an asset as security," and the quarter share of trust income at issue is not Nathan's asset. *Schroeder v. Buchholz*, 2001 ND 36, ¶ 26, 622 N.W.2d 202. As discussed, Nathan had a life interest in a quarter share of trust income, which terminated upon his death. Rigby currently has a life interest in the quarter share, and because she had no role in Nathan's theft of Ardella's non-trust money, it is improper to attach an equitable lien to her beneficial life interest. As the district court concluded, it is "undisputed through testimony at trial that Rigby was not involved, and has no personal liability for the actions of Nathan during his lifetime," and "any monies misappropriated by Nathan from Ardella's personal banking accounts while he was general durable power of attorney must be reclaimed from Nathan's estate." We affirm.

IV

[¶24] The district court erred in concluding that the co-trustees may offset Nathan's misappropriation of the trust income against Rigby's distribution, and we reverse that portion of the judgment and remand for further proceedings consistent with this opinion. We affirm the remainder of the judgment.

[¶25]  Jon J. Jensen, C.J.
       Daniel J. Crothers
       Lisa Fair McEvers
       Jerod E. Tufte
       Douglas A. Bahr

11